UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X
ISOJON KHUSENOV,                                      Case No. 1:21-CV-3703-HG

            Plaintiff,                           **RULE 56.1 STATEMENT**

    -against-

PROKRAFT INC. and PRO-CUT,

            Defendants.
-----------------------------------------------------------------------X
PROKRAFT INC.,

            Third-Party Plaintiff,

    -against-

KARZINKA US. INC.

            Third-Party Defendant.
-----------------------------------------------------------------------X

    Defendants/third-party plaintiff PROKRAFT INC. and PRO-CUT, by their attorneys, O'Connor Redd Orlando, LLP, hereby submit the within statement of material facts pursuant to Local Rule 56.1:

    1. This is an action in which plaintiff, ISOJON KHUSENOV, ("Khusenov"), seeks recovery for personal injuries sustained on May 29, 2021, "while engaged in the scope of his employment as a Butch Apprentice" and while utilizing a Pro-Cut KG-32 meat grinder. Complaint, paragraph 9, a copy of same is attached as **Exhibit "A".**

    2. On the date of his accident Khusenov was employed by Karzinka Inc. Id.

3. Non-party, S&V restaurant equipment Mfg., ("S&V"), is a manufacturer and distributor of restaurant equipment in New York and New Jersey. See affidavit of S&V vice president, Steve Ulman, par. 2. A copy of same is attached as **Exhibit "B".**

4. On December 17, 2019 S&V purchased a "KG-32 Meat Grinder 3H.P. 208V 3PHASE," (hereinafter, "the KG-32 Meat Grinder), from the defendant/third-party plaintiff, PROKRAFT INC., ("Prokraft"). Id. at par. 4. The meat grinder arrived on a skid, and was "boxed, sealed and pressure wrapped." Id. at par. 6., Ex. B.

5. Eduardo Flores is the president of ProKraft, which is a distributer of products, including the KG-32 Meat Grinder. See, E. Flores dep. tr, attached as **Exhibit "C",** at73.95. The meat grinders which Prokraft purchases and distributes are manufactured in Mexico by a company named Fabricantes De Equipos Para. Id. at 95. The units are subject to international testing so that they can be sold in the United States market. Id. at 103, 174. The certifications are listed under the ULNFF website. Id. at 104. The products are sold and shipped as they arrive in the warehouse, including the user's manual. Id. at 131 No alterations, additions or labeling are applied to the units by Prokraft. Id. at 132. The units are shipped with the user's manual. Id. at 119. The subject grinder comes from the manufacturer with a non-removable safety guard and a plunger. The guard is smooth and permanently affixed. Id. at 172-173. It is intended to be non-removable. Id. at 163. A photo of an exemplar unit is attached as **Exhibit "D".**

6. A copy of the owner's manual was marked as Plaintiff's Exhibit #2. ( A copy of same is attached as **Exhibit "E").** Ex. D , at 127-128. This owner's manual was for the KG-32 meat grinder, and was supplied by Fabricantes De Equipos Para along with the meat grinders which it purchased. Eduardo Flores, , Exhibit C at 130. Defendant Procut is only a brand name and it's owned by Prokraft. Id. at 138.

7. The first page of KG-32 meat grinder owner's manual contains the following warning:

 **Never** use hands or fingers to feed products directly into the bowl area, always use the pusher included in the equipment.

See, Ex. E, KG-32 meat grinder owner's manual, page 1.

8. On January 7, 2020 Karzina purchased a KG-32 Meat Grinder 3H.P. 208V 3PHASE" from S&V. See Ex. B, affidavit of S&V vice president, Steve Ulman, par. 5. The meat grinder was delivered to Karzina "in a sealed and pressure wrapped box." Id. at par. 5.

9. As depicted in the photo, the KG-32 Meat Grinder "was equipped with [a] safety guard from the manufacture" which was not a removable device. As depicted in the the photograph, the 'safety guard' is the round apparatus with circular holes located at the top of the photograph.



10. Removal of the safety guard would have to be done with significant force. Eduardo Flores observed a challenge at a trade show where a participant attempted to show that he was strong enough to break the safety guard off of the meat grinder. He was unsuccessful. See, Ex. C, E. Flores dep. tr. at 170.

11. The KG-32 Meat Grinder also came with a 'plunger,' the purpose of which was to push meat into the machine and thus keep machine's operator's hand away from the head stock opening. Ex. D, at 164. An exemplar of the 'plunger' which came with the KG-32 Meat Grinder is reproduced below.



**The plaintiff's testimony**

12. Plaintiff Khusenov came to the United States from Uzbekistan in 2018, when he was between 20 and 22 years of age. See, I. Khusenov 1/26/2022 dep. tr., **Exhibit F** at 8, 15.

13. Plaintiff speaks English a "[l]ittle bit, not much", and and cannot read English. Id. at 18, 87.

14. In March, 2020, an individual named "Hussein" informed Khusenov he needed workers and Khusenov came to the KARZINKA US. INC., d/b/s Halal Meat premises and met with the "boss," who told him that he "would be working in the chicken department," "[p]repping and preparing it." Id. at 29-30.

15. Khusenov began working at Halal Meat, six days a week, from 9:00 am to 8:00 or 9:00 pm. at the beginning of the summer, 2020, Id. at 31-32.

16. After working there for approximately six months Khusenov began operating the meat grinders. Id. at 46.

17. Khusenov testified that his accident occurred "a little time. Maybe a month or two. Maybe a month or so," after he began operating the meat grinders. Id. at 53.      18.      Khusenov operated the meat grinders four a five times a week, and that "[m]ost of the time" he operated the "big" meat grinder, which was the one involved in his accident. Id. at 53, 55.

19. On the date of Khusenov's accident there was no safety guard on the subject meat grinder, and Khusenov used his hands to push the meat into the hole at the top of the grinder. Id. at 99-100.

20. When using his hands to push the meat into the hole at the top of the grinder Khusenov was "very cautious" and "tried to put it in slowly trying to take care of [his] wrist, his fingers," as "[t]t's common sense that under [his] hand under high speed accelerating stuff [was] working" so "[o]f course," he was cautious. See, **Exhibit G**, I. Khusenov 2/7/2022 dep. tr., at 17-18.

21. Khusenov was aware that "if [he] put his hand too close to the auger, [his] fingers would get cut off." Id. at 19.

22. At his January 26, 2022 examination before trial Khusenov was shown a photocopy of a photograph, which was marked as Defendant's Exhibit "C." at 74.

23. The photocopy of a photograph marked as Defendant's Exhibit "C" is an exemplar of the warning label which is affixed to the subject meat grinder. See, Ex. F, at 74-75. For the Court's convenience, the above-referenced photographic evidence is reproduced below.



24. Plaintiff confirmed that the exemplar of the warning label that was affixed to the subject meat grinder on the date of incident had a pictogram consisting of triangle within which, in his own words, was a "hand with fingertips cut off." Id. at 75. For the Court's convenience, the above-referenced photographic evidence is reproduced below.



25. With relation to the second pictogram on the above-referenced warning label exemplar, when asked if "[t]he symbol of that figure, putting his hands inside a container," looked like "somebody putting their hands inside a meat grinder," Khusenov answered "[n]o," and testified that he believed this pictogram to depict "somebody putting garbage in a trash can." Id. at 93-94. For the Court's convenience, the above-referenced photographic evidence is reproduced below.



26. When he used his hands to push the meat into the hole at the top of the grinder he was "very cautious" and "tried to put it in slowly trying to take care of [his] wrist, his fingers" as "[t]t's common sense that under [his] hand under high speed accelerating stuff [was] working" so "[o]f course" he was cautious. See, Ex G, at 17-18. Thus, Khusenov admitidly understood that "if [he] put his hand too close to the auger, [his] fingers would get cut off." Id. at 19.

27. Khusenov's accident occurred when the sleeve of the uniform that he was wearing got caught in the machine, after which, "in less than a second" his hand was pulled in. Id. at 48, 51-

52. As testified to by Khusenov: "while I was pushing the meat, all of a sudden my hand [ ] was sucked in and shredded." See, I. Khusenov dep. tr, **Exhibit H,** at 57.

29. Khusenov testifed that "just in a second it happened". Id. at 61.

**Karzinka's deposition testimony**

29. Karzinka office manager, Hira Akram testified that Karzinka is a retail grocery store located at 711 Brighton Beach Ave., Brooklyn, NY, which has four retail locations/meat markets, three of which are in Brooklyn and one which is in Queens. See, **Exhibit I**, H. Akram dep. tr., at 16-18, 19.

30. She advised that Mr. Khusenov and his father, Kozim, were hired on April 30, 2020. Id. at 43.

31. In responding to the incicent, she visited the subject store and learned that on the date of his accident Khusenov was working full time as butcher. Id. at 30,183-184. The plaintiff's father Kozim took took the guard off, one of the butchers Khusem saw him do it with a metal cutter, in March of 2020. Id. at 31,42.

32. The butchers are trained to use the grinders and how to use the plungers. Id. at 73-75.

33. She acknowledged that Karzinka would receive manuals for the grinders that were delivered, but they threw them away with the box. Id. at 80. There was no practice or procedure to keep them. Id. at 80. The butchers were not required to look at the manuals. Id. at 81.

34. She first learned that the guard had been removed after the accident. Id. at 86. The butchers removed it to " to work faster and efficient, and that's why they decided to remove it." Id. at 86. The butchers complained that the subject grinder was slow with the safety guard in place. Id. at 88-89. She testitied "So the thing is, if the safety guard is there, they have to cut the machine in

small -- sorry, to cut the meat pieces to go through the hole. If they -- if I think the guard is not there, they can just shove whatever size pieces with the plunger and that's why they wanted to do that. As per my assumption, as per my thinking, when I think about why would they do that, the dangerous thing, that's what comes to my mind." Id. at 89. They wanted to get bigger pieces of meat into the grinder. Id. at 178.

35. She learned via a text from one of the butchers that they used a metal cutter to remove the guard. Id. at 87.

**Deposition of Karzinka by Khusen Nosirovich Hodjimametov**

36. Khusen Nosirovich Hodjimametov worked as a butcher at Karzinka for almost six years. See, Khusen N.H.'s 4/29/22 dep. tr., **Exhibit "J",** at 12.

37. Khusen was working the day the subject grinder was delivered to the store in a box. Id. at 40. He was involved in the unpacking and setup of this grinder. Id. at 41-42. When it was installed in its location, the guard was in place. Id. at 43-44. The guard was "pinned or welded" to the grinder, there were no screws. Id. at 51-52.

38. Use of the grinder required the meat to be cut up so that it could fit underneath the guard then pushed into the grinder with the plunger. Id. at 54-55.

39. The butchers felt that the guard slowed them down. Id. at 54-55. Khusen explained "when you are busy you don't want to cut the meat into small pieces." Id. at 55. To put smaller pieces into the grinder would require a "little more work and a little more time." Id. at 55.

40. No one contacted the seller regarding this issue. Id. at 62.

41. Therefore, the butchers reached a consensus to remove the guard. Id. at 56, 61. They

agreed that everyone would have to use the plunger once the guard was removed. Id. at 56-60.

42. They asked Kozim, the plaintiff's father, to remove the guard. Id. at 61-62. He removed it one to two days after they requested him to do so while the store was operating. Id. at 63.

43. They tried to remove it with a hammer and that didn't work, so Kozim cut it off using a grinder. Id. at 64.

44. They told the store manager of the removal of the guard after it was done. Id. at 61.

45. Khusen was shown the warning sticker on the machine and agreed that the "triangle that was present on the machine, that means don't put your hand near the machine or you might lose your fingers." See, Khusen N.H.'s 5-18-22 dep. tr., **Exhibit "J",** at 12.

46. Likewise, the red circle with a red line through meant do not put your finger or hand on it. Id. at 92

47. They also removed the guard from the smaller grinder that was not involved in the accident. Id. at 121.

**Mr. Khusenov's injury and the Third-Party Complaint**

48. At his deposition, Plaintiff took his right arm out of his sling, reflecting that it had been amputed just below the elbow on his right arm. See, I. Khusenov dep. tr., Ex. F, at 115.

49. As set forth in Dr. Roger's operative report, the plaintiff's right hand, wrist and forearm were mangled. He thefore amputed the "right hand, wrist and forearm." A copy of same is attached as **Exhibit "K".**

50. On August 10, 2021, Prokraft commenced a third-party action against Karzinke seeking, inter alia, common law indemnity and contribution. A copy of same is attached as **Exhibit**

**"L".**

51. Karzinka's Answer to same is attached as **Exhibit "M".**

Dated: Port Chester, New York
       June 16, 2022

                                                              _____
                                                              Peter Urreta