UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
ISOJON KHUSENOV,

                                        Case No. 1:21-CV-3703-HG

           Plaintiff,                      **MEMORANDUM OF LAW**

         -against-

PROKRAFT INC. and PRO-CUT,

              Defendants.
----------------------------------------------------------------------X
PROKRAFT INC.,

              Third-Party Plaintiff,

         -against-

KARZINKA US, INC.,

              Third-Party Defendant.
----------------------------------------------------------------------X

## PRELIMINARY STATEMENT

    Defendants/third-party plaintiff    PROKRAFT INC. and PRO-CUT submit the within Memorandum of Law in support of their application for an Order, issued pursuant to F.R.C. P. Rule 56, granting the defendants/third-party plaintiff, PROKRAFT INC. and PRO-CUT, summary judgment and dismissal of plaintiff, ISOJON KHUSENOV's, ("Khusenov"), Complaint and for common law indemnity against KARZINKA US, INC.  The fundamental basis for this motion is that the subject product, a KG-32 Meat Grinder,   as designed and manufactured, was not defective, and that the actions of the employer KARZINKA in affirmatively sawing off the  permanently affixed metal guard was, along with the actions of the plaintiff in sticking his hand into the now unguarded opening, the two causes of the subject accident. This motion is being made at this juncture based on

the directive of Judge Cogan as memorialized in the order and hearing transcript dated May 2, 2022.

## LEGAL ARGUMENTS

**POINT I -       SUMMARY JUDGMENT**

A party is entitled to summary judgment when the pleadings, affidavits and evidence show that there is no genuine issue as to any material facts such that the moving party is entitled to judgment as a matter of law. Lang v. Retirement Living Pub. Co., 949 F.2d 576, 580 (2d Cir. 1991). Once the moving party has met its burden to show that there is no genuine issue of material fact, Adickes v. S. H. Kress & Co., 398 U.S. 144, 157, 90 S. Ct. 1598, 1608, 26 L. Ed. 2d 142 (1970), the party opposing the motion has the burden to show specific facts proving there is a genuine issue remaining for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1355, 89 L. Ed. 2d 538 (1986).

"To prevail on a motion for summary judgment, the moving party must show that there is no genuine, triable issue of material fact, and that it is entitled to judgment as a matter of law." Baker v. 221 N. 9 St. Corp., supra, citing Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986); Fed. R. Civ. P. 56(c)(2). "A fact is considered material "if it 'might affect the outcome of the suit under the governing law,'" and an issue of fact is a genuine one where 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Id., quoting Holtz v. Rockefeller & Co. Inc., 258 F.3d 62, 69 (2d Cir. 2001) quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

"The moving party may discharge its initial [summary judgment] burden by demonstrating that there is an absence of evidence to support the non-moving party's case on an issue for which the non-moving party bears the burden of proof at trial." Id., citing Celotex, 477 U.S. at 322-23; see Cole v. Long Island R.R. Co., 2021 U.S. Dist. LEXIS 41767, at 10 (S.D.N.Y. 2021) ("[t]he movant may

make this [summary judgment] showing by demonstrating that there is an absence of evidence to support the non-moving party's case on an issue on which the non-movant has the burden of proof"); Baker v. 221 N. 9 St. Corp., 2010 U.S. Dist. LEXIS 99915, at 10 (E.D.N.Y. 2010) (same).

Once the moving party has demonstrated that there is an absence of evidence to support the non-moving party's case on an issue on which the non-movant has the burden of proof, "the nonmoving party, then, 'must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" Cole v. Long Island R.R. Co., 2021 U.S. Dist. LEXIS 41767, at 10 (S.D.N.Y. 2021) quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (emphasis in original)..

"'Essential to [claims of negligence, strict products liability and breach of warranty] is that plaintiff demonstrate that the product was defective.'" Plummer v. Apex Tool Grp., LLC, 2016 U.S. Dist. LEXIS 65703, at 5-6 (W.D.N.Y. 2016) (brackets in original) quoting Smith v. Herman Miller, Inc., 2005 U.S. Dist. LEXIS 38398 (E.D.N.Y. 2005).  Here, Khusenov can offer no evidence that the KG-32 meat grinder as originally distributed was defective via expert opinion or otherwise, it shall be demonstrated, that his strict products liability and breach of warranty claims must be summarily dismissed.

**POINT II -   KHUSENOV'S STRICT PRODUCTS LIABILITY CLAIMS CANNOT BE MAINTAINED**

May the Court note that the only entity involved in this claim is Prokraft.  As advised by Prokraft's president Mr. Flores, Procut is merely a brand name and not a legal entity.  A plaintiff's product liability action can be brought under any or all of three theories: Strict Products Liability (PJI 2:120); Breach of Warranty (PJI 2:140); and Negligence (PJI 2:125). The three theories overlap and

intersect each other. '"A manufacturer has a duty to warn against latent dangers resulting from foreseeable uses of its product of which it knew or should have known." Liriano v. Hobart Corp., 92 N.Y.2d 232, 237, 677 N.Y.S.2d 764 (1998). This rule applies with equal force to distributors and retailers. Godoy v. Abamaster of Miami, 302 A.D.2d 57, 754 N.Y.S.2d 301 (2d Dept. 2003). Liability extends not only to those who manufacture the defective product, but also to any party in the direct distributive chain. Cover v. Cohen, 61 N.Y.2d 261, 473 N.Y.S.2d 378 (1984).

"Under the doctrine of strict products liability the manufacturer of a product is under a nondelegable duty to produce a defect-free product," In re Faherty ex rel. Faherty, 954 N.Y.S.2d 759 (Queens Sup. 2012), and "[a] cause of action in strict products liability lies where a manufacturer places on the market a product which has a defect that causes injury." Robinson v. Reed-Prentice Div. of Package Mach. Co., 49 N.Y.2d 471, 478-79 (1980). Under this doctrine "[l]iability is imposed irrespective of fault," In re Faherty ex rel. Faherty, supra, and "[the] scienter that is so vital to the negligence suit need not be shown." Caprara v. Chrysler Corp., 52 N.Y.2d 114, 123 (1981). Rather, "[a]ll that is required is that the product be found defective." Id., citing Codling v. Paglia, 32 N.Y.2d 330, 335 (1973) ("[w]e hold that today the manufacturer of a defective product may be held liable to an innocent bystander, without proof of negligence, for damages sustained in consequence of the defect").

The law is well settled that, in addition to manufacturers, strict products liability extends to any entity in 'the stream of commerce,' i.e., "any one responsible for placing the defective product in the marketplace," Brumbaugh v. CEJJ, Inc., 152 A.D.2d 69, 71-72 (3rd Dept. 1989), including "distributors, retailers, processors of materials and makers of component parts." Id., ("the pool of potential [strict products liability] defendants has been judicially expanded to include distributors, retailers, processors of materials and makers of component parts, or essentially to any one

responsible for placing the defective product in the marketplace").  Other entities, such as end users, which do not design, manufacture or assemble a product and place it in stream of commerce, are not properly subject to strict products liability claims. See Church ex rel. Smith v. Callanan Indus. Inc., 285 A.D.2d 16, 19 (3rd Dept. 2001), aff'd, 99 N.Y.2d 104 (2002) ("[t]o the extent that plaintiffs rely on a products liability theory ... the complaint fails to state a cause of action because, in constructing the guiderail, defendant did not produce a product for sale or place a product in the stream of commerce"); Starobin v. Niagara Mach. & Tool Works Corp., 172 A.D.2d 64 (3rd Dept. 1991) (it would have been improper to impose strict liability on finance lessor which merely offered use of money and neither marketed frame press which caused plaintiff's injury nor placed press in stream of commerce).

"As the law has developed thus far, a defect in a product may consist of one of three elements: mistake in manufacturing, improper design, or by the inadequacy or absence of warnings for the use of the product." Robinson v. Reed-Prentice Div. of Package Mach. Co., 49 N.Y.2d at 478-79. Each such element is discussed, infra.

## A.    The KG-32 Meat Grinder Was Not Defectively Designed

Under New York's strict product liability law, HN2 the manufacturer of a defective product is liable to an injured or damaged person if:

> (1) the product is "defective" because it is not reasonably dangerous as marketed; (2) the product was used for a normal purpose; (3) the defect was a substantial factor in causing the plaintiff's injuries; (4) the plaintiff by the exercise of reasonable care would not have both discovered the defect and apprehended its danger; (5) the plaintiff would not have otherwise avoided the injury by the exercise of ordinary care.

Fane v. Zimmer, Inc., 927 F.2d 124, 128 (2d Cir. 1991), citing Wolfgruber v. Upjohn Co., 72 A.D.2d

59, 62, 423 N.Y.S.2d 95, 97 (4th Dep't 1979), aff'd, 52 N.Y.2d 768, 436 N.Y.S.2d 614(1980). To establish a prima facie case based on an alleged design defect, it must be demonstrated that the "manufacturer breached its duty to market safe products when it marketed a product designed so that it was not reasonably safe, and that the defective design was a substantial factor in causing plaintiff's injury." Voss v. Black & Decker Mfg. Co., 59 N.Y.2d 102, 107 (1983) ("the plaintiff is required to show that the defectively designed product caused his injury and that the defect was the proximate cause of the injury"); Caronia v. Philip Morris United States, Inc., 715 F.3d 417, 428 (2d Cir. 2013) (same). In addition, it must be shown that the product was not reasonably safe because there was a substantial likelihood of harm, and that it was feasible to design the product in a safer manner, Id. at 108. [1]

Our Courts hold that a manufacturer of a purportedly defectively designed product demonstrates, prima facie, its entitlement to summary judgment by demonstrating either: (1) the absence of direct evidence that a product's design was unreasonably unsafe, see Beruashvili v. Hobart Corp., 2010 U.S. Dist. LEXIS 146015, at 37 (E.D.N.Y. 2010); or (2) "[that] after the product [left] the possession and control of the manufacturer, there [was] a subsequent modification which substantially alter[ed] the product and [was] the proximate cause of plaintiff's injuries." Robinson, 49 N.Y.2d at 475.

1.   The KG-32 Meat Grinder Was Not Unreasonably Safe

In a 'design defect' case, "[a]lthough a plaintiff may rely on circumstantial evidence of a defect, 'if a defendant comes forward with any evidence that the accident was not necessarily attributable to a defect, the plaintiff must then produce direct evidence of a defect,'" Giordano v. Pgt Indus., 2007 U.S. Dist. LEXIS 88016, at 14 (S.D.N.Y. 2007) quoting Winckel v. Atl. Rentals & Sales, 159 A.D.2d 124 (2 Dept. 1990) (citing cases), "[i]n the absence of direct evidence that a

product's design was unreasonably unsafe, a design defect claim can survive summary judgment only in the event that the plaintiff can: '(1) establish that a product did not perform as intended; and (2) exclude all other causes for the accident.'" Id., quoting <u>Cuntan v. Hitachi KOKI USA, Ltd.,</u> 2009 U.S. Dist. LEXIS 127016 (E.D.N.Y. 2009); see <u>Yaccarino v. Motor Coach Indus., Inc.,</u> 2006 U.S. Dist. LEXIS 82017 (E.D.N.Y. 2006) ("[b]ecause Plaintiff offers no direct evidence to exclude these plausible, alternative causes of the incident, Plaintiffs' claims cannot survive Defendant's motion for summary judgment.").

Here, the KG-32 meat grinder was designed with a permanently affixed steel guard which – had it not been forcibly sawed off by Karzinka employees – would have prevented Khusenov's accident herein. There is, thus, an absence of direct evidence that the meat grinder was unreasonably safe.

In a strikingly similar case, in <u>Beruashvili v. Hobart Corp.,</u> 2010 U.S. Dist. LEXIS 146015. (E.D.N.Y. 2010), a month after emigrating to the United States from Tbilisi, Georgia, plaintiff began working in the meat department at Brighton King Meats. Within two weeks of starting his job plaintiff was shown how to operate a commercial grade meat grinder by the other employees, and he used it without incident 15 to 20 times over the next two months. It was a table-top, commercial-grade heavy-duty product designed for professional use in supermarkets and other high-volume meat processing businesses. The meat grinder had a five-horsepower motor that turned "a component called a 'worm,' akin to an oversize corkscrew, at a rate of 215 revolutions per second," <u>Id.,</u> at 3, and when "used as intended, pieces of meat [were] placed in the grinder's 'feed pan' and slid under a guard over the opening to the 'hopper' or 'feed cylinder,' where the meat drop[ped] and encounter[ed] the worm." Id. "Once in the hopper, the meat [was] pushed by the worm towards a rotating knife, which shear[ed] off smaller pieces and force[d] them through a plate,

producing the end product of ground meat or sausage." Id. at 3.  "When the 4046 Grinder was manufactured and shipped… the aluminum guard was affixed to the feed pan with four smooth-topped steel drive screws, sunk slightly below the surface of the pan, Id. at 3.

The plaintiff in Beruashvili testified at deposition that he was taught by the other employees of Brighton King Meats to put meat on the 4046 Grinder's feed pan and push the meat toward the hopper with his unguarded hands. He was not taught to use a dowel to push meat into the machine, and it was undisputed that, in plaintiff's experience with the meat grinder, the guard was never attached.

On the date of his accident "[plaintiff] was at work grinding meat in [a] [meat] Grinder." Id. at 6.  "As he had done previously, plaintiff was sweeping the contents of the feed pan with his right hand toward the unguarded feed cylinder." Id. at 6. "At one point, he pushed too far and his fingers came into contact with the worm, which pulled his hand further into the machine." Id. at 6.  "As a result of the accident, his right hand and forearm were amputated." Id. at 6.

Dismissing plaintiff's design defect claim, the court held that, not only was there an absence of evidence that the design of the meat grinder was unreasonably unsafe, but that "[t]o the contrary, the proof adduced convincingly show[ed] that [plaintiff's] accident was not caused by any design defect in the manufacture of the 4046 Grinder," Id. at 37-38, and that "[t]o the extent that the condition of the machine contributed to the happening of the accident, the proof point[ed] to a third party's post-sale removal of the guard." Id.

### 2.   There Was a Subsequent Modification of the KG-32 Meat Grinder

The duty of a product manufacturer "does not extend to designing a product that is impossible to abuse or one whose safety features may not be circumvented," Robinson v. Reed-Prentice Div.

of Package Mach. Co., 49 N.Y.2d at 481, and "[a] manufacturer need not incorporate safety features into its product so as to guarantee that no harm will come to every user no matter how careless or even reckless." Id. Thus, "[m]aterial alterations by a third party which work a substantial change in the condition in which the product was sold by destroying the functional utility of a key safety feature, however foreseeable that modification may have been, are not within the ambit of a manufacturer's responsibility," Mackney v. Ford Motor Co., 251 A.D.2d 298, 298-99 (2d Dept. 1998), and, therefore, the manufacturer of a purportedly defectively designed product demonstrates, prima facie, its entitlement to summary judgment by establishing "[that] after the product [left] the possession and control of the manufacturer, there [was] a subsequent modification which substantially alter[ed] the product and [was] the proximate cause of plaintiff's injuries." Robinson, 49 N.Y.2d at 475; see Mackney v. Ford Motor Co., 251 A.D.2d at 298-99 (2d Dept. 1998). For example, in Tuttle v. U.S. Slicing Machine Co., 335 F.2d 63 (4th Cir. 1964), the operator of commercial meat grinder, from which a third party removed protective grill, was injured when the operator used his hand to push meat into the grinder instead of using a wooden pusher provided for that purpose; court affirmed summary judgment in favor of manufacturer.

Further, in Hernandez v. Biro Mfg. Co., 251 A.D.2d 375, (2d Dept. 1998) plaintiff brought an action, seeking recovery for personal injuries sustained when "[h]is right hand was amputated when he was loading a meat grinder and the sleeve of his uniform became caught in the grinder as he was trying to free a piece of frozen meat by inserting his hand into the grinder." Id. at 376. "It [was] undisputed that the safety features had been removed from the grinder prior to the plaintiff's operation of the machine on the day of the incident… [and] that at the time the grinder left the possession and control of the manufacturer… and the assembler…  its safety features were intact." Id. The trial court granted the defendant's motion for summary judgment, which the Appellate

Division affirmed, reasoning that "a manufacturer cannot be held liable in negligence or in strict products liability 'where, after the product leaves the possession and control of the manufacturer, there is a subsequent modification which substantially alters the product and is the proximate cause of the plaintiff's injuries.'" Id., quoting Robinson v. Reed-Prentice Div. of Package Mach. Co., 49 N.Y.2d 471, 476 (1980).

Likewise, in Mercedes v. 248 JD Food Corp., 184 A.D.3d 513 (1st Dept. 2020) the court held that the "[d]efendant established its prima facie entitlement to judgment as a matter of law in this action where plaintiff butcher alleged that he was injured when, while cleaning meat out of the hopper of the meat mixer-grinder in the supermarket where he worked, the machine turned on, causing the mixing paddles to rotate." Id. Affirming the trial court' grant of summary judgment, the Appellate Division noted that the "[d]efendant's engineer opined that the mixer-grinder had been made to industry standards with a magnetic interlock system meant to cut power to the motor when the hopper guard was opened and left defendant's control in safe condition, but that it had been rewired to bypass the interlock system," and that, thus, the "[d]efendant submitted evidence showing that it was not liable because plaintiff's injury was a result of a post-sale modification of the product that disabled its safety system." Id.

Also, in Darsan v. Guncalito Corp., 153 A.D.2d 868 (2d Dept. 1989) plaintiff brought an action in strict products liability recovery after the infant plaintiff suffered the amputation of his right hand, wrist and forearm while operating a meat grinder manufactured by the defendant/manufacturer and equipped at the time of purchase with a safety guard over the feed pan over the grinding mechanism. There, one of plaintiff's co-employees thereafter removed the safety guard for easier accessibility to the grinding mechanism. The Appellate Division reversed the trial court, reasoning, in pertinent part, as follows:

> [P]laintiffs' attempt to invoke the exception to the subsequent modifications defense, i.e., that a manufacturer may be held liable under a design defect theory where the product is purposefully manufactured so as to permit its use without a certain safety feature which was designed to be removable is unavailing. In view of the design of the grinder, specifically, that the safety guard was affixed to the machine with three fairly heavy rivets which would have to be removed forcibly, and the deposition testimony of [plaintiff's employer's] president wherein he acknowledged that at the time of purchase he had been specifically advised of the purpose of the guard, which he recognized was not readily removable, describing the safety feature as 'sealed in,' it is manifest that the product was not 'purposefully manufactured to permit its use without the safety guard.'"

Id., 153 A.D.2d at 870.

In this matter the facts of Khusenov's accident are virtually identical to those presented in Hernandez v. Biro Mfg. Co., supra, in that, in both cases: (1) plaintiff sought/seeks recovery for a hand amputation which occurred when the sleeve of each plaintiffs' respective uniform became caught in a meat grinder while each plaintiff was inserting meat into the machine with his hand; and (2) "[i]t is[/was] undisputed that the safety features had been removed from the grinder prior to the plaintiff's operation of the machine on the day of the incident... [and] that at the time the grinder left the possession and control of the manufacturer... and the assembler...   its safety features were intact." Id. Likewise, in this case, as in Darsan v. Guncalito Corp., supra: (1) the evidence establishes that the subject safety guard was affixed to the meat grinder with heavy rivets, which could only have been forcibly removed; (2) such that "it is manifest that the [KG-32 meat grinder] was not 'purposefully manufactured to permit its use without the safety guard.'" Id., 153 A.D.2d at 870. Accordingly, as there was a subsequent modification which substantially altered the KG-32 meat grinder and was the proximate cause of Khusenov's injuries, Khusenov's design defect claim must be dismissed herein for this second, independent reason.

**B.   The KG-32 Meat Grinder Did Not Have a Manufacturing Defect**

"Manufacturing defects, by definition, are 'imperfections that inevitably occur in a typically small percentage of products of a given design as a result of the fallibility of the manufacturing process.'" Caprara v. Chrysler Corp., 52 N.Y.2d 114, 128 (1981). "'A [defectively manufactured] product does not conform in some significant aspect to the intended design, nor does it conform to the great majority of products manufactured in accordance with that design.'" Id., quoting Henderson, Judicial Review of Manufacturers' Conscious Design Choices: The Limits of Adjudication, 73 Col L Rev 1531, 1543) (brackets in original). "Stated differently, a defectively manufactured product is flawed because it is misconstructed without regard to whether the intended design of the manufacturer was safe or not." Id. "Such defects result from some mishap in the manufacturing process itself, improper workmanship, or because defective materials were used in construction." Id., 52 N.Y.2d at 128-29. Thus, "[t]he essence of [ ] a [manufacturing defect] claim is that a product did not perform as intended because it was misconstructed," Cramer v. Toledo Scale Co., 158 A.D.2d 966, 967 (4th Dept. 1990); see Opera v. Hyva, Inc., 86 A.D.2d 373, 377 (4th Dept. 1982).

A manufacturer establishes, prima facie, its entitlement to dismissal of a manufacturing defect claim by presenting evidence that the product functioned as intended. Parker v. Raymond Corp., 87 A.D.3d 1115, 1116 (2d Dept. 2011). Alternately, "[i]n a products liability case, 'if a defendant comes forward with any evidence that the accident was not necessarily attributable to a defect, the plaintiff must then produce direct evidence of a defect' in order to defeat the motion." Guzzi v. City of N.Y., 84 A.D.3d 871, 872 (2d Dept. 2011), see Michael v. GM Co., 2018 U.S. Dist. LEXIS 194219, at 31 (S.D.N.Y. 2018) ("[i]n order to survive summary judgment on a malfunction theory, Plaintiff must first create a genuine issue of material fact that the seatbelt did not perform as intended");

Here, there is a complete absence of any evidence that the subject KG-32 meat grinder did not function as intended.  Rather, the proof has shown that it did, and that, but for the post-sale removal of the safety guard, Khusenov's accident would not have occurred.  Indeed, as Khusenov has not alleged that the KG-32 meat grinder differed from the manufacturer's intended result for from other ostensibly identical units of the same product line, this forecloses recovery upon a manufacturing defect theory of liability. See Ramirez v. ITW Food Equip. Grp., LLC, 686 F. 435, 437 (9th Cir. 2017).  Accordingly, Khusenov's manufacturing defect claim must be dismissed.

**C.     Prokraft Cannot be Held Liable Upon a Breach of a Duty to Warn Theory of Recovery**

"Although failure to warn sounds in negligence, New York courts have also held that inadequate warnings will render a product defective for purposes of warranty and strict products liability." Ezagui v. Dow Chem. Corp., 598 F.2d 727, 733 (2d Cir. 1979); see Mustafa v. Halkin Tool, Ltd., 2007 U.S. Dist. LEXIS 23096, *63 (E.D.N.Y. 2007) ("[t]here is no difference between the prima facie elements of a failure to warn claim sounding in negligence and one sounding in strict products liability").

"To succeed on a failure to warn claim, a plaintiff must prove that (1) a manufacturer has a duty to warn (2) against dangers resulting from foreseeable uses about which it knew or should have known, and (3) that failure to do so was the proximate cause of the harm." Black v. Covidien, PLC, 2018 U.S. Dist. LEXIS 13185, 7 (W.D.N.Y. 2018) (internal quotation marks and citations omitted). As expanded upon below, Khusenov cannot obtain recovery herein upon a failure to warn theory of liability for two separate and independent reasons: (1) Prokraft supplied the KG-32 Meat Grinder with an owner's manual and safety warning decals and thus did not breach a duty to warn; and (2) as Khusenov was fully aware of the hazard of using his hands to grind meat, without a safety guard

in place, through his general knowledge, observation and common sense, any purported failure to warn was not a proximate cause of Khusenov's accident.

1.  The KG-32 Grinder Had The Appropriate and Required Safety Warnings

The law is well settled that a product manufacturer may establish, prima facie, its entitlement to summary dismissal of a failure to warn claim by demonstrating that it provided an operator's manual and/or warning decals, advising/warning of the subject danger. See Theoharis v. Pengate Handling Sys. of N.Y., Inc., 300 A.D.2d 884, 886 (3rd Dept. 2002); Wood v. Peabody Int'l Corp., 187 A.D.2d 824 (3rd Dept. 1992); Aghabi v Sebro, 256 A.D.2d 287, 288 (2d Dept. 1998).

For example in Van Buskirk v. Migliorelli, 185 A.D.2d 587 (3rd Dept. 1992), defendant submitted proof that the wagon was manufactured and sold with appropriate warnings and safety decals, but that they were subsequently either stripped off or painted over. Obviously, the material alteration of the wagon's warning decal safety feature has the effect of relieving defendant, as manufacturer, of any potential liability. Moreover, "inasmuch as a warning would not have given plaintiff any better knowledge of the [obvious dangers of working in close proximity to the exposed power takeoff shaft] than he had already acquired through his prior [experience] or than was 'readily discernible' from observation … the absence of any warning could not have proximately caused plaintiff's injuries." Id. at at 590.

Likewise, in Ryan v. Arrow Leasing Corp., 260 A.D.2d 565 (2d Dept. 1999) the Court dismissed the plaintiff's complaint, holding that "[t]he manual for the post-hole digger specified that the clevis pin should be used to attach the two components, satisfying any duty [the manufacturer] may have had to warn about substitution." Id., 260 A.D.2d at 566.

In our case, the evidence establishes that the KG-32 Meat Grinder: (1) came with an operator's manual, warning that the operator should never use his/her hands to feed products directly

into the bowl area, and that, instead, the plunger provided with the grinder should always be used; and (2) had three prominently displayed internationally understood sticker pictograms, explicitly warning of the dangers attendant to using one's hands to 'feed' the meat into the KG-32 meat grinder and illustrating that the 'plunger' which was provided along with the grinder should instead be used. Thus, Prokraft satisfied its duty to warn, such that Khusenov cannot obtain recovery upon this claim under these grounds.

2.    Plaintiff Was Already Aware of the Danger of Using His Hands to Place the Meat Into the Grinder

"A manufacturer has a duty to warn against latent dangers resulting from foreseeable uses of its product of which it knew or should have known," Liriano v. Hobart Corp., 92 N.Y.2d 232, 237 (1998) as well as "the danger of unintended uses of a product provided these uses are reasonably foreseeable." Id., see also Bukowski v. CooperVision Inc., 185 A.D.2d 31, 592 N.Y.S.2d 807 (3d Dept. 1993). Once a warning is given, the focus

shifts to the adequacy of the warning. Liability may be premised on the absence of warnings as to a particular hazard of the product or on the insufficiency of the warnings

provided. Sosna v. American Home Products, 298 A.D.2d 158, 748 N.Y.S.2d 548 (1st Dept. 2002). A failure-to-warn defendant "may be able to prevail under New York law . . . even though it is undisputed that [the worker] failed to read the warnings, if he can demonstrate that adequate warnings would have come to the attention of a third party, such as fellow workers or an employer, and they would have informed him of those warnings." Humphrey v. Diamant Boart, Inc., 556 F. Supp. 2d at 181; accord, e.g., Sorto-Romero v. Delta Int'l Mach. Corp., 2007 U.S. Dist. LEXIS 71588, 2007 WL 2816191at 12.

The Court of Appeals has "emphasize[d], however, that a safety device built into the

integrated final product is often the most effective way to communicate that operation of the product without the device is hazardous." Liriano v. Hobart Corp., 92 N.Y.2d at 241. "Thus, where the injured party was fully aware of the hazard through general knowledge, observation or common sense, or participated in the removal of the safety device whose purpose is obvious, lack of a warning about that danger may well obviate the failure to warn as a legal cause of an injury resulting from that danger." "Put differently, when a warning would have added nothing to the user's appreciation of the danger, no duty to warn exists as no benefit would be gained by requiring a warning." Id. at 242.

For example, in Hernandez v. Asoli, 171 A.D.3d 893 (2d Dept. 2019) plaintiff brought an action seeking, inter alia, strict products liability recovery for personal injuries sustained while working in food preparation in a restaurant. At the time of his accident plaintiff was grating cheese with a commercial cheese grater that was attached to and powered by a meat grinder. Intending to dislodge a piece of cheese from the grater, plaintiff placed his hand into the hopper without first turning off the meat grinder, after which his fingers came into contact with the spinning blade of the grinder, resulting in the loss of several fingers. "According to plaintiff, he had used a heavy piece of metal that was normally used for the pasta machine on top of the grinder to keep the machine running continuously, a practice which he allegedly had 'seen [his] coworkers' use. "When asked if he saw the disk spinning at the time he placed his right hand into the hopper, plaintiff testified 'yes.'" Id. "In this regard, plaintiff had previously testified that he had used the grinding machine 'about three times' to grate cheese; that he learned how to use it by watching 'other people;' that he had not been taught how to use the machine; that he was not given an operators manual; and that he was merely told to 'be careful." Id. Affirming, inter alia, the trial court's grant of summary judgment and dismissal of plaintiff's failure to one claim, the court reasoned as follows:

> We agree with the Supreme Court's determination granting those branches of the separate motions of [defendants] which were for summary judgment dismissing the causes of action alleging failure to warn insofar as asserted against each of them. [Defendants]made a prima facie showing of entitlement to judgment as a matter of law dismissing those causes of action insofar as asserted against them by establishing, as a matter of law, that they had no duty to warn the plaintiff of the open and obvious danger of knowingly placing his hand into a cheese grater in close proximity to its spinning blade.

Id. at 895.

In this matter, the evidence establishes: (1) that as of the date of his accident Plaintiff had operated the subject meat grinders four or five times a week over a course of five months; (2) that the butchers in the meat department never used their hands to 'feed' meat into the grinders and instead always utilized a 'plunger;' and (3) that Khusenov was acutely and admittedly aware of the danger of placing his hand/fingers in proximity to the grinder, in that "if [he] put his hand too close to the auger, [his] fingers would get cut off." Further, after the guard was cut off, the butchers agreed that everyone would have to be more careful since the grinder was now a possible danger. Khusenov was thus aware of the open and obvious risk of using his hands to place meat into the grinder, such that his failure to warn claim must be summarily dismissed herein for this further, independent reason.

## D.   KHUSENOV'S BREACH OF EXPRESS WARRANTY CLAIM MUST BE DISMISSED

"To state a claim for breach of express warranty, plaintiff must allege that '(1) plaintiff and defendant entered into a contract; (2) containing an express warranty by the defendant with respect to a material fact; (3) which warranty was part of the basis of the bargain; and (4) the express warranty was breached by defendant.'" Skae Power Solutions, LLC v. Rae Corp., Technical Systems, Inc., 2011 WL 5295043 (N.Y. Sup. 2011) quoting LaSalle Bank Natl. Assn. v Merrill Lynch Mtge.

Lending, Inc., 2007 WL 2324052, at 8, 2007 US Dist LEXIS 59303, 23 (SD NY 2007) (internal quotations and citation omitted); see Schimmenti v. Ply Gem Indus., Inc., 156 A.D.2d 658, 659 (2d Dept. 1989) ("to support the plaintiffs' cause of action sounding in the breach of an express warranty, they had to show that there was an 'affirmation of fact or promise by the seller, the natural tendency of which [was] to induce the buyer to purchase" and that the warranty was relied upon'") quoting Friedman v. Medtronic, Inc., 42 A.D.2d 185 (2d Dept. 1973). The failure to plead the terms of warranty upon which plaintiff purportedly relied mandates dismissal of a breach of express warranty claim for failure to state a cause of action. See Davis v. New York City Hous. Auth., 246 A.D.2d 575 (2d Dept. 1998).

Here, while in his Complaint Khusenov has alleged that Prokraft warranted that the subject KG-32 meat grinder "was fit for the purpose for which it was intended," Khusenov has not pled: (1) that he and Prokraft entered into a contract; (2) the terms of any alleged warranty and/or alleged representations; (3) that he relied upon any such purported warranty and/or representations; and/or (4) how any alleged warranty and/or representations were breached. Accordingly, Khusenov cannot obtain recovery herein upon a breach of express warranty cause of action.

## E.  PLAINTIFF'S BREACH OF IMPLIED WARRANTY CLAIM MUST BE DISMISSED

"The implied warranty of merchantability is a guarantee by the seller that its goods are fit for the intended purpose for which they are used and that they will pass in the trade without objection.'" Caronia v. Philip Morris USA, Inc., 715 F.3d 417, 433 (2d Cir. 2013) (quoting Saratoga Spa & Bath, Inc. v. Beeche Sys. Corp., 230 A.D.2d 326, 330, 656 N.Y.S.2d 787 (3d Dept. 1997)). "To the extent that Plaintiff's breach of implied warranty claim is based on design defect, under New York law such a claim 'requires proof of the following three elements: (1) that the product was

defectively designed or manufactured; (2) that the defect existed when the manufacturer delivered it to the purchaser or user; and (3) that the defect is the proximate cause of the accident.'" Morrison v. Hoffmann-La Roche, Inc., No. 14-CV-4476 (DLI) (RML), 2016 U.S. Dist. LEXIS 135291, 2016 WL 5678546, at 11 (E.D.N.Y. Sept. 29, 2016).

To establish a breach of implied warranty claim based on a defective product, plaintiffs must show that the [product] was not "fit for the ordinary purposes for which such goods are used." Denny v. Ford Motor Co., 87 N.Y.2d 248, 258, 662 N.E.2d 730, 639 N.Y.S.2d 250 (1995) (citing N.Y. U.C.C. § 2-314(2)©). This inquiry "focuses on the expectations for the performance of the product when used in the customary, usual and reasonably foreseeable manners." Id. at 258-59. Breach of implied warranty is a cause of action "involving true 'strict' liability, since recovery may be had upon a showing that the product was not minimally safe for its expected purpose—without regard to the feasibility of alternative designs or the manufacturer's 'reasonableness' in marketing it in that unsafe condition." Id. at 259; see also Porrazzo v. Bumble Bee Foods, LLC, 822 F. Supp. 2d 406, 420-21 (S.D.N.Y. 2011). Here, as set forth in full previously, the evidence reveals that the KG-32 grinder was neither defectively designed or manufactured. As such, this cause of action must also fail.

**POINT III     PROKRAFT INC. IS WITHOUT FAULT AND IS ENTITLED TO COMMON LAW INDEMNITY AGAINST KARZINKA**

Common law indemnity and contribution provide for the respective transfer of the entire or partial loss. "Common law indemnity is a restitution concept which permits shifting the loss because to fail to do so would result in the unjust enrichment of one party at the expense of the other." McCarthy v. Turner Constr., Inc., 17 N.Y.3d 369, 375, 929 N.Y.S.2d 556 (2011). "In contribution, the tort-feasors responsible for plaintiff's loss share liability for it. Since they are in *pari delicto,* their common liability to plaintiff is apportioned and each tort-feasor pays his ratable part of the

loss." Mas v. Two Bridges Assocs., 75 N.Y.2d 680, 689-690 (1990).  Where an entity "has

discharged a duty which is owed by [it] but which as between [it] and another should have been

discharged by the other" a contract to reimburse or indemnify is implied by law.  McDermott v. City

of New York, 50 NY2d 211, 217, 428 N.Y.S.2d 643,, quoting Restatement of Restitution § 76).

As to common law indemnity against the plaintiff's employer, Workers' Compensation Law

Section 11 states that "an employer shall not be liable for contribution or indemnity to any third

person based upon liability sustained by an employee acting within the scope of his or her

employment for such employer unless such third person proves through competent medical evidence

that such employee has sustained a "grave injury."

Section 11 goes on to state that the term "grave injury" "shall mean only" one or more of an

enumerated list of injuries.  The list reads, in its entirety: "death, permanent and total loss of use or

amputation of an arm, leg, hand or foot, loss of multiple fingers, loss of multiple toes, paraplegia or

quadriplegia, total and permanent blindness, total and permanent deafness, loss of nose, loss of ear,

permanent and severe facial disfigurement, loss of an index finger or an acquired injury to the brain

caused by an external physical force resulting in permanent total disability."

As is suggested by the wording of Section 11, the New York Court of Appeals has instructed

that "grave injury" is to be narrowly construed.  The Court cautioned litigants that "injuries

qualifying as grave are narrowly defined . . . and the words in [the] statute are to be given their plain

meaning without resort to forced or unnatural interpretations."  Castro v. United Container Mach.

Group, Inc., 96 N.Y.2d 398, 401,  736 N.Y.S.2d 287 (2001); see Meis v. ELO Org., LLC, 97 N.Y.2d

714, 716, 740 N.Y.S.2d 68 (2001).  The purpose of the 1996 legislation was "to reduce costs for

employers while also protecting the interests of injured workers." Rubeis v. Aqua Club, Inc., 3 NY3d

408, 415, 788 NYS2d 292 (2004).  Section 11serves to protect employers by barring third-party

actions against them "except in extremely limited, defined circumstances." <u>Castro v. United Container Mach. Group</u>, 96 NY2d 398, 402, 736 NYS2d 287 (2001). As noted above, the legislative intent to narrowly define the term "grave injury" is readily apparent from the face of the statute, which provides that "grave injury" "shall mean only" one of the enumerated injuries.

Even beyond the face of the statute, however, the Court of Appeals has examined and elucidated the context of the legislature's intent in drafting Section 11:

> Section 11 was enacted in 1996 as part of a comprehensive reform intended to reduce costs for employers while also protecting the interests of injured workers (Omnibus Worker's Compensation Reform Act of 1996, L. 1996, ch. 635; Governor's Approval Mem., Bill Jacket, L. 1996, ch. 635, at 54, 1996 N.Y. Legis. Ann., at 459). Before that, New York State stood alone in freely allowing a defendant in a personal injury action brought by an employee injured on the job to seek indemnification or contribution from the employer. Central to the reform was immunity from tort liability for employers who provide workers' compensation coverage by exposing employers to third-party liability "only in cases involving narrowly defined 'grave' injuries" (Governor's Approval Mem., Bill Jacket at 55, 1996 N.Y. Legis. Ann., at 460). The injuries enumerated as grave were "deliberately both narrowly and completely described. The list is exhaustive, not illustrative: it is not intended to be extended absent further legislative action." (id.).

<u>Rubeis v. Aqua Club, Inc.</u>, 3 N.Y.3d 408, 415–16 (2004) (parenthetical citations in original).

With respect to claims of grave injury based on "permanent and total loss of use or amputation of an arm, leg, hand or foot," our Courts have been quite clear that a grave injury is defined in pertinent part as permanent and total loss of use. Partial loss of use is insufficient. See, <u>Rubeis v. Aqua Club, Inc.</u>, 3 NY3d 408, 416, 788 NYS2d 292 (2004); <u>Castro v. United Container Mach. Group</u>, 96 NY2d 398, 736 NYS2d 287 (2001); <u>Blackburn v. Wysong & Miles Co.</u>, 11 AD3d 421, 422, 783 NYS2d 609 (2d Dept. 2004).

Here, Prokraft delivered an internationally certified grinder equipped with a permanent, non

removable guard, as well as an instruction manual.  The Karzinka employees collectively decided to remove the guard, with full knowledge of the danger that action presented.  In order to do so, the plaintiff's father had to saw the grinder off using an electronic saw, also know as a grinder.  Once the guard was removed, the workers agreed that they would have to be careful in their further use of the grinder.  As such, Prokraft is without fault in this matter and the proximate cause of the plaintiff's injury was the Karzinka workers' removal of the guard.

On the issue of the plaintiff's grave injury, Mr. Khusenov's right hand was amputated below the elbow of his right arm.  He testified as such and the medical records reflect the same.  As such, Plaintiff suffered  "permanent and total loss of use or amputation of an arm, ... hand", within the plain meaning of a grave injury pursuant to Workers Compensation Section 11.  Accordingly, Prokraft, a passive entity without active fault in the chain of distribution of this grinder, is entitled to common law indemnity against the plaintiff's employer Karzinka Inc.

<u>**CONCLUSION**</u>

For the reasons set forth above, Prokraft and Procut respectfully submit that they are entitled to summary judgment and dismissal of the plaintiff's Complaint, or in the alternative, a judgment against Karzinka for common law indemnity.

Dated:      Port Chester, New York
            June 16, 2022

                                    _____
                                    Peter Urreta