UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ISOJON KHUSENOV,                                    **Case No. 1:21-CV-3703-HG**

                                       *Plaintiff,*

-*against-*.                                        **RULE 56.1 STATEMENT**

PROKRAFT INC. and. PRO-CUT,

                                       *Defendants.*

_____

PROKRAFT INC.,

                                       *Third-Party Plaintiff,*

-*against-*.

KARZINKA US, INC.,

                                       *Third-Party Defendant.*

Plaintiff, ISOJON KHUSENOV, by his Attorneys, LAW OFFICE OF YURIY PRAKHIN,

P.C., hereby submits the within response to Defendants PROKRAFT INC. and PRO-CUT's

Statement of Facts pursuant to Local Rule 56.1:

    1.    Plaintiff does not dispute Defendants' Rule 56.1 statement, para 1.

    2.    Plaintiff does not dispute Defendants' Rule 56.1 statement, para 2.

    3.    Plaintiff does not dispute Defendants' Rule 56.1 statement, para 3.

    4.    Plaintiff does not dispute Defendants' Rule 56.1 statement, para 4.

    5.    Plaintiff does dispute Defendants' Rule 56.1 statement, para 5; however, it must be

noted that Eduardo Flores does not know what goes into certification of the machines, what are

the requirements for certification, and has not verified that the certifications are legitimate and

proper (Defendants' Exhibit C, Third-Party Defendant's Exhibit D, at p. 104); he has taken no

courses regarding safety concerns of meat grinders (*Id.* at pp. 104–105); he has never used this

grinder himself (*Id.* at p. 159), and does not remember it being used in his presence (*Id.* at pp. 159–160). Asked if he was familiar with any type of emergency shut off for if someone has an accident; something visible and obvious to a person, he said he is "not aware of that" (*Id.* at p. 161). He does not know what the guard is made of or how it is affixed, even though he claims it is not a removable device (*Id.* at p. 163). He has never tried to remove the guard, and only *assumes* it has to be done with use of a machine with force (*Id.* at pp. 163–164). He does not know anything about industry standards (*Id.* at pp. 164–165). He did not observe any testing to see how easily it may be to remove the guard; he only saw someone at a trade show use a hammer unsuccessfully (*Id.* at pp. 169–170). He has no idea about the durability of the warning labels (*Id.* at p. 172).

6.     Plaintiff does not dispute Defendants' Rule 56.1 statement, para 6.  However, it must be noted that the owner's manual (Defendants' Exhibit D, Third-Party Defendant's Exhibit E) is inadmissible; it is not authenticated by Mr. Flores' testimony (Mr. Flores has not conducted an evaluation of the user manuals nor anyone else has to his knowledge (Defendants' Exhibit C, Third-Party Defendant's Exhibit D (*Id.* at p. 119); he has seen it but not the specifics within (*Id.* at p. 119–120); and having been shown a copy of the manual (Exhibit E), when asked if it was the manual that comes preprinted with the grinders he only answered, "Apparently so" (Defendants' Exhibit D, Third-Party Defendant's Exhibit E at p. 130). In any event, Figure 5 shows the user's working position, from which any warning label on the side of the machine is clearly not within the view of the operator. The instruction to feed product into the opening does not say anything about use of hands or warning regarding clothing.

7.     The owner's manual is inadmissible.  In any event, Plaintiff does not dispute Defendants' Rule 56.1 statement, para 7.

8.     Plaintiff does not dispute Defendants' Rule 56.1 statement, para 8.

9.      The owner's manual is inadmissible. In any event, Plaintiff does not dispute Defendants' Rule 56.1 statement, para 9.

10.     Plaintiff objects to Defendants' Rule 56.1 statement, para. 10 as a statement of opinion rather than fact. The observation of a challenge is hearsay and should not be admissible to prove anything regarding the subject unit; except the demonstration does indicate that the manufacturer was aware that users would attempt to remove the guard.

11.     Plaintiff does not dispute Defendants' Rule 56.1 statement, para 11.

12.     Plaintiff does not dispute Defendants' Rule 56.1 statement, para 12.

13.     Plaintiff does not dispute Defendants' Rule 56.1 statement, para 13.

14.     Plaintiff does not dispute Defendants' Rule 56.1 statement, para14.

15.     Plaintiff does not dispute Defendants' Rule 56.1 statement, para 15.

16.     Plaintiff does not dispute Defendants' Rule 56.1 statement, para 16.

17.     Plaintiff does not dispute Defendants' Rule 56.1 statement, para 17.

18.     Plaintiff does not dispute Defendants' Rule 56.1 statement, para 18.

19.     Plaintiff does not dispute Defendants' Rule 56.1 statement, para 19. It is however noted that, when the accident occurred, he did not use his fingers to push in the meat (Defendants' Exhibit G, Third-Party Defendant's Exhibit I at p. 47).

20.     Plaintiff does not dispute Defendants' Rule 56.1 statement, para 20.

21.     Plaintiff does not dispute Defendants' Rule 56.1 statement, para 21. It is however noted that, while he knew if his hand was too close to the auger his *fingers* would get cut off, he did not know it was *really* dangerous (Defendants' Exhibit G, Third-Party Defendant's Exhibit I at p. 18) in that he did not know his sleeve could get caught in the auger (*Id.* at p. 48).

22.     Plaintiff does not dispute Defendants' Rule 56.1 statement, para.22

23. Plaintiff does not dispute Defendants' Rule 56.1 statement, para 23.

24. Plaintiff does not dispute Defendants' Rule 56.1 statement, para 24, but Plaintiff notes that this interpretation by Plaintiff of the meaning of the pictogram is after the subject accident, not before.

25. Plaintiff does not dispute Defendants' Rule 56.1 statement, para 25.

26. Plaintiff does dispute Defendants' Rule 56.1 statement, para 26; Plaintiff also respectfully refers to the response to statement para 21 above.

27. Plaintiff does not dispute Defendants' Rule 56.1 statement, para 27.

28. ("29") Plaintiff does not dispute Defendants' Rule 56.1 statement, para 28 ("29").

29. Plaintiff does not dispute Defendants' Rule 56.1 statement, para 29.

30. Plaintiff does not dispute Defendants' Rule 56.1 statement, para 30.

31. Plaintiff objects to Defendants' Rule 56.1 statement, para 31 as inadmissible hearsay.

32. Plaintiff does not dispute Defendants' Rule 56.1 statement, para 32.

33. Plaintiff does not dispute Defendants' Rule 56.1 statement, para 33.

34. Plaintiff objects to Defendants' Rule 56.1 statement, para 34 as inadmissible hearsay.

35. Plaintiff objects to Defendants' Rule 56.1 statement, para 35 as inadmissible hearsay.

36. Plaintiff does not dispute Defendants' Rule 56.1 statement, para 36.

37. Plaintiff does not dispute Defendants' Rule 56.1 statement, para 37.

38. Plaintiff does not dispute Defendants' Rule 56.1 statement, para 38.

39. Plaintiff does not dispute Defendants' Rule 56.1 statement, para 39.

40. Plaintiff does not dispute Defendants' Rule 56.1 statement, para 40.

41. Plaintiff objects to Defendants' Rule 56.1 statement, para 41 as inadmissible hearsay.

42. Plaintiff objects to Defendants' Rule 56.1 statement, para 42 as inadmissible hearsay.

43. Plaintiff objects to Defendants' Rule 56.1 statement, para 43 as inadmissible hearsay.

44. Plaintiff objects to Defendants' Rule 56.1 statement, para 44 as inadmissible hearsay.

45. Plaintiff does not dispute Defendants' Rule 56.1 statement, para 45.

46. Plaintiff does not dispute Defendants' Rule 56.1 statement, para 46, but notes that this is but one individual's post-accident interpretation which is immaterial.

47. Plaintiff does not dispute Defendants' Rule 56.1 statement, para 47.

48. Plaintiff does not dispute Defendants' Rule 56.1 statement, para 48.

49. Plaintiff does not dispute Defendants' Rule 56.1 statement, para 49.

50. Plaintiff does not dispute Defendants' Rule 56.1 statement, para 50.

51. Plaintiff does not dispute Defendants' Rule 56.1 statement, para 51.

PLAINTIFF SUBMITS THE FOLLOWING ADDITIONAL MATERIAL FACTS

52. Notably absent from both motions' statements of facts are dimensions of the safety guard or any proof that the accident would not have occurred even with the guard in place; also no expert engineer opined for Defendants or Third-Party Defendant.)

PLAINTIFF'S TESTIMONY

53.     There is only one off button on the subject meat grinder (Defendants' Exhibit H, Third-Party Defendant's Exhibit K at p. 60), and it was located under the tray on the side of the machine. (Defendant's Exhibit F, Third-Party Defendant's Exhibit F at p. 62).

54.     He did not see any stickers or warning labels on the machine (Defendant's Exhibit F, Third-Party Defendant's Exhibit F at pp. 71–73).

55.     The series of images shown at his first deposition were also under the tray (Defendants' Exhibit H, Third-Party Defendant's Exhibit K at pp. 62–63).

56.     Some of those images, which he is asked to interpret only after the accident, not as what he understood them to be prior to or at the time of the accident, are acknowledged post-accident as depicting fingers being cut (Defendant's Exhibit F, Third-Party Defendant's Exhibit F at pp. 72, 74, 76, 77). Others, he did not understand. (Defendant's Exhibit F, Third-Party Defendant's Exhibit F at pp. 93–95) doesn't look like a meat grinder (Defendant's Exhibit F, Third-Party Defendant's Exhibit F at p. 94), and light blue circle (94) he does not understand the symbol, and when asked if it looks like a hand holding something, he said he does not think so (Defendant's Exhibit F, Third-Party Defendant's Exhibit F at p. 95).

57.     Everyone always just used their hands to push meat into the grinder (Defendant's Exhibit F, Third-Party Defendant's Exhibit F at p. 100)

58.     While he acknowledged understanding that it was a potentially dangerous machine, as he was careful, he did not know it was *really* dangerous (Defendants' Exhibit G, Third-Party Defendant's Exhibit I at p. 18). While he knew if his hand was too close to the auger his fingers would get cut off (Defendants' Exhibit G, Third-Party Defendant's Exhibit I at p. 19), but he did not use his fingers to push in the meat (Defendants' Exhibit G, Third-Party Defendant's Exhibit I

at p. 47). He did not put his fingers in; rather, his sleeve was too big and wide for him and was caught and pulled in by the machine (Defendants' Exhibit G, Third-Party Defendant's Exhibit I at p. 38–41, 44–45). He did not know his sleeve could get caught in the auger (Defendants' Exhibit G, Third-Party Defendant's Exhibit I at p. 48).

59.     He would usually turn the machine on and off with his right hand, but with his right hand caught, he was confused and it took a few seconds to find the off button (Defendants' Exhibit G, Third-Party Defendant's Exhibit I at p. 49).

60.     Also, the one and only off button (with nothing e.g. in the area of the hole that would turn the machine off) being the same size as the on button, and being obscured under the tray and blocked by a knob, prevented him from immediately turning off the machine. (Defendants' Exhibit H, Third-Party Defendant's Exhibit K at pp. 57–59).

61.     If there was an off button visible and located on top, he might have saved his hand (Defendants' Exhibit H, Third-Party Defendant's Exhibit K at p. 62).

PLAINTIFF'S EXPERT AFFIDAVIT

62.     Plaintiff's expert, Dr Andrew Foley, a Professional Engineer with a Ph.D in Engineering Mechanics and over 30 years of experience in Mechanical Engineering inspected the grinder, and reviewed the owner's manual and brochure (Exhibit "1" hereto).

63.     At no point, in either the manual or brochure, is the specific danger of the worm screw (see figure 9) described to the operator. The one warning sign, (see figure 7), a type "supplemental directive" according to the American National Standards Institute (ANSI) standard ANSI Z535.6, appears to show an injury caused by a tool or blade and not by the worm screw. (*Id.*)

64.     Contrary to the ANSI Z535.4 standard the warning is obscured from the operators view; the tray is clearly blocking the user's view of the warning label and stop button. (*Id.*)

65.     As the insertion of a hand into the grinder "WILL" absolutely result in a serious injury, and potentially death, the DANGER signal word should have been [BUT WAS NOT] used along with a suitable description. (*Id.*)

66.     There is only one regular stop button and no dedicated emergency stop button (with yellow background). The stop button on the Pro-Cut KG-32 is approximately 25mm (1 inch) in diameter and is also somewhat recessed behind a plastic cover. A typical Emergency Stop button consists of a raised red mushroom-type button (Operator) that would, at its smallest size, still be of the order of 30 mm in diameter with a 53.5 mm yellow back plate. (ISO 13850), *i.e.* considerably bigger. (*Id.*)

67.     Apart from the feed tray obscuring the operator's view, the stop button is located on the side of the machine, *i.e.* around a corner and oriented 90 degrees away from the operator's forward view. The stop button is therefore clearly not visible to the grinder operator. (See figure 16.) (*Id.*).

68.     In an emergency, such as in this case, it would also be difficult for the user to reach the button if either of his/her hands was ingested into the worm screw. As the operator would also be effectively blocking access to the stop button, it would also be difficult for someone rendering assistance to also stop the machine. (*Id.*)

69.     The tray locking knob and the head attachment handle also obstruct the stop button. (*Id.*)

70.     On another Pro-Cut grinder model, KG-12, the tray locking knob has been removed and only a grinder head locking knob remains. For the remaining single tray locking knob there

are two versions with different locations (see figure 18 (a) and (b)). In the KG-12_SS model, the "handle" comes off of the grinder head horizontally and so approaches the location of the stop button. In the KG-12-FS version, the knob comes off of the grinder head in a downward direction and so moves away from the stop button/switch. (*Id.*)

71.     There seems to be no reason for this change other than a recognition of the possible obstruction issue. (*Id.*)

72.     Other manufacturers of similar meat grinders have made a much better attempt at installing a "proper emergency stop button," and have done so at the front of the machine where it can be seen and more easily accessed. (*Thunderbird Stainless Steel No.32 3 HP Meat Grinder; KWS JQ-58 Duo Function Commercial 2.6 HP Electric Fresh Meat Cutter*). Of note is that it would also be possible for an operator with a trapped hand to bump the emergency stop button with his body when it is placed on the front. (*Id.*).

73.     The stop button on the KG-32 grinder involved in this incident is not a true "Emergency Stop Button" per code. It also has a visibly obscured location, and is unnecessarily placed on the side of the machine instead of on the front, and is "cluttered" by both the tray locking knob and the grinder head locking handle. These can pose physical obstructions to someone trying to locate the already visibly obscured stop button while also trying to reach around a trapped operator who would also be blocking clear access to the button. (*Id.*).

74. In sum, Dr. Foley concludes that:

> (i) WARNING signal words in the manual do not clearly state the danger posed by the grinder. Warning signs need to be replaced with DANGER signal words and a clear description that the worm screw WILL ingest and grind the user's hand and arm if the user inserts his hand into the down chute causing catastrophic damage and/or death.

(ii) The WARNING sign on the machine similarly needs to be replaced with a DANGER sign and placement of the sign needs to be enhanced such that the user can clearly see it when operating the machine. Adding it to heightened sides of the feed tray may be an option.

(iii) A bigger "mushroom head type" standard emergency stop button needs to be added to the machine in a location that is more accessible and can even be operated by the user's body if an arm was to be trapped. i.e. Not on the side of the machine next to the worm screw. The current stop button is not an emergency stop button.

(iv) The location of the stop button should not be impaired by obstructions and protrusions such as the grinder head locking handle and the feed tray locking knob. Both of which are in close proximity to the stop button on this machine. Other grinders provided by this same manufacturer have removed these obstructions.

(v) As a practical matter, to obtain the high meat processing rates advertised for this machine it is not realistic to expect an operator to be constantly removing and inserting the plastic pusher into the guard in order to move the meat horizontally across the tray and then vertically down the chute. As such, this system needs to be improved. In the interim, recognition of the fact that users will remove the guard needs to be made. (Per UL 73 19.1A) and as such an interlock that would prevent operation of the grinder without the guard is required.

(vi) In conclusion the machine and its supporting literature fail to warn the user of the dangers it poses. WARNING signs should be replaced by the higher-level DANGER signs and need to be repositioned to be visible to the operator of the machine. Practical operation of the machine for high commercial throughputs is inconvenient with the provided guard and plastic pusher. As such, users are likely to remove the guard which, because of the absence of an interlock, will mean the machine can operate unguarded. Finally, the machine has no real Emergency Stop Button and its actual stop button is hidden from the operator's view and physically obstructed by various handles and knobs. All of the above mean that the utility of the ProCut 32 Meat Grinder does not outweigh the risk it poses. The Procut 32 therefore has serious design flaws.

WITNESS, KHUSEN NOSIROVICH HODJIMAMETOV'S AFFIDAVIT

75.     Witness, KHUSEN NOSIROVICH HODJIMAMETOV, witnessed the subject accident and testifies in an Affidavit which is annexed hereto (Exhibit "2").

76.     Mr. HODJIMAMETOV was working in close proximity to the Plaintiff at the time Plaintiff's accident occurred. (*Id.*).

77.     Mr. HODJIMAMETOV heard Mr. Khusenov scream when the incident occurred, and immediately rushed towards him (*Id.*).

78.     Mr. HODJIMAMETOV then immediately attempted to turn the meat grinder off, and attempted to do so unsuccessfully for about five to ten seconds (*Id.*)

79.     Mr. HODJIMAMETOV kept trying to reach the button that turns the meat grinder off, but could not see the off button. (*Id.*)

80.     Approximately fifteen seconds passed between the time Mr. HODJIMAMETOV arrived at Plaintiff's side and the time the machine was turned off (*Id.*).

81.     Mr. HODJIMAMETOV is the man wearing a black hat in the video (Exhibit "3").

82.     The video confirms how much time it took between the time Mr. HODJIMAMETOV arrived at Plaintiff's side and the time the machine was turned off (Exhibits "2" and "3").

Dated: Brooklyn, NY
        July 14, 2022

/s/ *Yuriy Prakhin*
_____
YURIY PRAKHIN, ESQ.