UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ISOJON KHUSENOV, | **Case No. 1:21-CV-3703-HG** |
| *Plaintiff,* | |
| -against-. | **MEMORANDUM OF LAW** |
| PROKRAFT INC. and. PRO-CUT, | |
| *Defendants.* | |

| |
|---|
| PROKRAFT INC., |
| *Third-Party Plaintiff,* |
| -against-. |
| KARZINKA US, INC., |
| *Third-Party Defendant.* |

## PRELIMINARY STATEMENT

Plaintiff, ISOJON KHUSENOV, by his Attorneys, LAW OFFICE OF YURIY PRAKHIN, PC, hereby submits the within Memorandum of Law in opposition to the motion by Third-Party Defendant KARZINKA US, INC., which seeks an Order granting summary judgment pursuant to FRCP Rule 56. This motion is fundamentally based on the subject product (a meat grinder) having not been defective, yet no expert testimony is provided by Third-Party Defendant. Third-Party Defendant also base their motion upon the incorrect assertion that the Plaintiff was injured because he stuck his hand into the unguarded opening. Plaintiff did not stick his hand into the opening; the sleeve of his uniform was caught by the machine, resulting in his arm being sucked in and severely injured resulting in amputation.

The evidence submitted by Third-Party Defendant, together with the expert findings submitted by Plaintiff herewith (Dr Andrew Foley Affidavit, Exhibit "1"), reveals that the subject

meat grinder was indeed defectively designed, and that adequate warnings were not provided. Additionally, witness, Khusen Nosirovich Hodjimametov, corroborates Plaintiff's testimony and the findings and opinions of Dr. Foley regarding the inaccessibility and difficulty finding the off button (Exhibit "2"), which is clearly a design defect or at a minimum which raises a triable issue of fact warranting denial of Third-Party Defendant's motion.

## LEGAL ARGUMENT

When considering a motion for summary judgment, "the court must view the evidence in the light most favorable to the party against whom summary judgment is sought and must draw all reasonable inferences in his favor." L. B. Foster Co. v. America Piles, Inc., 138 F.3d 81, 87 (2d Cir. 1998) (*citing* Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 [1986]).

The moving party bears the burden of showing that no genuine issue of material fact exists. See Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).

In Third-Party Defendant's POINT III, they argue that Plaintiff can offer no evidence that the subject meat grinder was defective, that the meat grinder was not defectively designed, that it was not unreasonably safe, and that there was a subsequent modification for which Third-Party Defendant should not be held liable.

While inadequate warnings render a product defective for purpose of warranty and strict products liability, Third-Party Defendant argues that there was no failure to warn because of the owner's manual and safety warning decals. However, the owner's manual is inadmissible, safety warnings were not visible where they were located nor did they adequately communicate the nature of the hazard presented. The warnings were clearly not prominently displayed, nor were

they understood. Plaintiff, a non-English speaker/reader, was not given any warning in his native language.

Third-Party Defendant argues that Plaintiff was aware of the danger of using his hands to place meat into the grinder. However, he was not injured as a result of intentionally placing his hand in the grinder; his sleeve got caught and pulled his hand and arm in. He was absolutely not fully aware of the potential for the subject occurrence to happen as it did. Nor were adequate warnings provided to any third party who might have informed Plaintiff.

"[I]n cases where reasonable minds might disagree as to the extent of plaintiff's knowledge of the hazard, the question is one for the jury (see, e.g., Jiminez v Dreis & Krump Mfg. Co., 736 F2d 51, 55-56 [2d Cir 1984]). Liriano v. Hobart Corp., 92 NY2d 232 (1998).

Contrary to the position of Third-Party Defendant as asserted in their POINT V, IMPLIED WARRANTY, as set forth above, evidence reveals the meat grinder was defectively designed.

Plaintiff submits an Affidavit of Plaintiff's expert, Dr Andrew Foley, a Professional Engineer with a Ph.D in Engineering Mechanics and over 30 years of experience in Mechanical Engineering, in which he provides evidence that the meat grinder was defective in design and failure to warn, thus requiring denial of Third-Party Defendant's motion.

Plaintiff's expert Dr. Foley testifies that it was in fact defectively designed, was unreasonably safe, not merely for its modified condition. Based upon the above, Plaintiff's claim for strict products liability, duty to warn, implied warranty, cannot be summarily dismissed. Defendants' motion should therefore be denied.

On the issue of causation, unlike in cases such as Mercedes v 248 JD Food Corp., 184 AD3d 513 (1 Dept, 2020), cited by Defendants, where the plaintiff was injured while cleaning a meat grinder; in Mercedes v. 248 JD Food Corp., the defendant met its *prima facie* burden by

submitting the opinion of an engineer that the grinder was made to industry standards, and that it had "a magnetic interlock system meant to cut power to the motor" if the guard was opened. In the instant case, Defendants and Third-Party Defendant fail to submit the opinion of such an expert, or of such a similar mechanism as discussed by Dr. Foley. In Mercedes, the plaintiff's expert was found to have "no background in industrial meat processing machines, provided a conclusory opinion, without reference to any standards, and did not opine that alternative designs were available or financially feasible." In the instant case, Dr. Foley has demonstrably relevant experience, provides much more than a conclusory opinion, does reference industry standards, and shows that alternative designs were available and feasible.

Similarly, Hernandez v. Asoli, 171 AD3d 893 (2d Dept, 2019) also cited by Defendants, where the plaintiff had knowingly put his hand in to a running machine to try to dislodge a piece of cheese, is distinguishable from this case because the Plaintiff herein was not reaching his hand *into* the running machine; further, in Hernandez the defendant met their prima facie burden through the submission of expert testimony, unlike Defendants and Third-Party Defendant herein.

In strict products liability, the plaintiff need only prove that a defect, whether improper design, or a failure to provide adequate warnings was a substantial factor in bringing about the injury. See Godoy v Abamaster of Miami, Inc., 302 AD2d 57 (2d Dept, 2003) (where the plaintiff suffered the loss of all four fingers on her right hand while she was operating a manually fed, electrically-powered commercial meat grinder). Conversely, even where a Plaintiff's conduct is a substantial factor in causing the accident, it is not to "be deemed a superseding cause of the accident absolving defendant of liability," where it is not "egregious or unforeseeable." Soto v. N.Y. City Trans. Auth., 6 N.Y.3d 487, 492, 846 N.E.2d 1211 (2006). A plaintiff's failure to read a warning label or exercise due care does not excuse a defendant from liability unless it is the *sole*

cause of the plaintiff's injury. Sheppard v. Charles A. Smith Well Drilling & Water Sys., 93 A.D.2d 474, 478, 463 N.Y.S.2d 546 (3d Dep't 1983) (*citing* Voss v. Black & Decker Mfg. Co., 59 N.Y.2d 102, 110, 450 N.E.2d 204, 463 N.Y.S.2d 398 (1983)). In the instant case, Plaintiff's conduct cannot be deemed the *sole* cause of his injury, or the extent of his injury, given the defects and failure to warn reflected in the record on the pending motions.

"The determinations as to whether the product at issue was defectively designed and whether the defect was the proximately cause of the injury are traditionally left to the jury" Gokey v Castine, 163 AD2d 709 (3d Dept, 1990), citing Voss, Supra. In Gokey, where the movant argued the plaintiff's "conduct in clearing the harvester while it was still running was the sole cause of plaintiffs' injuries," the Appellate Division ruled that, whereas "a manufacturer is obligated to exercise that degree of care in his plan or design so as to avoid any unreasonable risk of harm to anyone who is likely to be exposed to the danger when the product is used in… an unintended yet reasonably foreseeable use" (*quoting* Micallef v Miehle Co., Div. of Miehle-Goss Dexter, 39 NY2d 376, at 385-386 (1796)), and where the plaintiffs "submitted expert opinion concerning defects in the design of the forage harvester, including the lack of emergency stopswitches in the location where Gokey was injured," summary judgment was properly denied.

Questions of material fact clearly exist herein requiring trial on such issues including but not limited to whether the location, size and appearance of the one and only stop button was improper where it was difficult to reach during the emergency, with a bulky knob in the way, and completely blocked by the tray; the alleged unsuccessful attempt to break open the safety guard at a trade show reveals that the manufacturer knew that users would try to remove the guard, and accordingly the design should have incorporated an electrical circuit breaker such as those commonly found in coffee grinders, where the grinder stops if the lid is opened); in other words

the fact that the machine remained operable despite the fact that the guard was removed is clearly an egregious design defect. And, to make the machine inoperable when the guard is removed would not have created a significant increase in cost to manufacture the meat grinder. It is respectfully submitted that a feasible alternative design has been demonstrated.

In fact, as to additional grounds for liability of Third-Party Defendant, KARZINKA, not only did KARZINKA clearly have actual notice of the missing guard, and failure to provide their own warnings (or even the owner's manual) to the Plaintiff, but KARZINKA by way of its employees undeniably contributed as a cause of the accident their creation of the hazard at issue by removing the guard in the first place.

"Where, as here, a qualified expert opines that a particular product is defective or dangerous, describes why it is dangerous, explains how it can be made safer, and concludes that it is feasible to do so, it is usually for the jury to make the required risk-utility analysis" (Pierre-Louis v DeLonghi Am., Inc., 66 AD3d 859 (2d Dept, 2009]) *quoting* Wengenroth v Formula Equip. Leasing, Inc., 11 AD3d 677, 680, (2d Dept, 2004). Unlike the instant case, in Pierre-Louis, the movants' initial burden regarding the plaintiff's design defect claim was met by submission of an expert opinion that the product was not defectively designed; no such expert opinion is provided in support of either Defendants' or Third-Party-Defendant's motion here. Movants in Pierre-Louis were however found not to have met their burden regarding plaintiff's failure to warn claims, contending that the product's operator, the decedent-plaintiff's son, "did not read the warnings contained in the instructions" for the subject product. While he testified that the testified "that the only writing he saw on the subject [product] itself were the numbers on the… dial, which contained no warning" the Appellate Division held that, "[r]esolving all reasonable inferences in the manner

most favorable to the [motion's] opponents… the movants did not establish, as a matter of law, that" adequate warnings were provided.

This Court has held that summary judgment should be denied in such cases as where the "plaintiff or a third party removed a blade guard from a table saw and the table saw was operable without it, Forssell v. Lerner, 101 A.D.3d 807, 809, 956 N.Y.S.2d 117 (2d Dept, 2012)" Beltran v Techtronic Indus. N. Am., Inc., 2015 US Dist LEXIS 75884 , 2015 WL 3651099 (EDNY June 11, 2015, No. 13 CV 5256 (RJD) (RER)]). In Forssell, the Appellate Division found a triable issue of fact "as to whether the table saw was purposely designed to permit use without the blade guard." It is respectfully submitted that this Court should likewise deny summary judgment in the instant case.

In Fernandez v Mark Andy, Inc., 7 AD3d 484 (2d Dept 2004), with "evidence that the safety guards were easily removable and that the label press was operable without them…, an issue of fact [was found] as to whether the label press was purposefully manufactured to permit its use without the safety guards." In the instant case the safety guard was clearly easily removable given the ease with which a butcher shop employee apparently took it off. While Defendants attempt to portray the guard as very difficult to remove by submitting hearsay description of an unscientific demonstration by hammer, as discussed herein that hearsay is inadmissible and Defendants fail to demonstrate their intended point. Further, even assuming arguendo that the guard was very difficult or even impossible to remove by hammer, allowing for a view of evidence in a light most favorable to the non-moving Plaintiff, this says nothing of the ease or difficulty of removal by any other means. The simple fact that the subject meat grinder did continue to operate without its safety guard clearly suggests it was designed to do so, even where the removal of the guard was an acknowledged concern as reflected by the alleged hammer demonstration.

"[T]he relationship between a substantial alteration to a machine and the causation of the injury is a jury question." Jiminez v Dreis & Krump Mfg. Co., 736 F2d 51 (2d Cir 1984)

"[I]f a plaintiff establishes the existence of material issues of fact concerning the defective design of a safety feature, the defendant will not automatically prevail on summary judgment simply because that safety feature was modified post sale. The substantial modification defense is intended to insulate manufacturers and others in the distribution chain from liability for injuries that would never have arisen *but for* the post-sale modification of a safety feature on an otherwise safe product." Hoover v New Holland, Inc., 23 NY3d 41 (2014). In Hoover, where the plaintiff "sustained severe injuries when she was caught and dragged into the rotating driveline of a tractor-driven post hole digger" the NY Court of Appeals held that the "plaintiff raised triable issues of fact concerning the defective design of the safety shield that were sufficient to defeat summary judgment based on substantial modification" even where, "[p]rior to the accident,… the owner of the post hole digger, removed a plastic safety shield from the machine after years of use had left the shield damaged beyond repair." "[E]ngineers employed by the various defendants… opined that the safety shield was not intended to be removed because it fully protected against the entanglement hazard posed by the rotating components near the gearbox, and that the digger was not intended to be operated without the shield in place." The motion was opposed with an affidavit by the plaintiff's mechanical engineer who opined as to defects regarding the shield as well as a protruding nut and bolt. The evidence submitted was found to support finding that "the digger was defectively designed because it incorporated a protruding nut and bolt and/or a plastic shield, and that either or both of these design defects were a substantial factor in causing plaintiff's injuries." In the instant case, the evidence herein shows that the failure to incorporate a disabling

feature such that the grinder would be inoperable if the guard was removed was a design defect and that this defect was a substantial factor in causing the accident.

In Beruashvili v Hobart Corp., 2010 US Dist LEXIS 146015 [EDNY July 14, 2010, No. 05-CV-1646 (ENV) (MDG)]) cited by Defendants, this Court set forth that:

> Under New York law, a plaintiff alleging a design defect must, *inter alia*, prove the existence of a feasible safer alternative design. See Voss v. Black & Decker Mfg. Co., 59 N.Y.2d 102, 108, 463 N.Y.S.2d 398, 402, 450 N.E.2d 204, 208 (1983). In order to accomplish this, a plaintiff must proffer an expert who "can show, through testing and construction of a prototype, that such an alternative design is within the realm of practical engineering feasibility, thereby demonstrating the utility, cost, safety, sanitation and other characteristics of the proposed alternative; and/or . . . can identify makers of similar equipment who have already put into use the alternative design that has been proposed." Rypkema v. Time Mfg. Co., 263 F. Supp. 2d 687, 691-92 (S.D.N.Y. 2003) (citing Voss, 59 N.Y.2d at 108, 463 N.Y.S.2d at 402, 450 N.E.2d at 208).

In Benashvili, the plaintiff's expert "neglected to create and test prototypes of these alternative designs, point out similar products in the marketplace which embody his proposed alternative designs or demonstrate their practicality, feasibility or soundness using any other reliable approach." In the instant case, however, Dr. Foley does indeed point out similar products in the marketplace which embody his proposed alternative designs.

In Smith v Royce W. Day Co., 242 AD2d 394 (3d Dept, 1997) the Appellate Division ruled that "[a]lthough plaintiffs' failure to warn claim was not alleged in their complaint [the] Supreme Court properly considered it given the fact that defendants challenged it in their moving papers." Alvord & Swift v Stewart M. Muller Constr. Co., 46 NY2d 276 (1978), cited in Smith, the Court of Appeals ruled that a "failure to state a tort cause of action in pleadings would not be sufficient to permit unconditional summary judgment in favor of defendant, as a matter of law, if plaintiff's submissions provided evidentiary facts making out a cause of action." "Long before enactment of the CPLR, on motion for summary judgment courts looked beyond the pleadings to discover the

nature of the case... It has only been the dead hand of a criticized case that influenced courts to grant summary judgment for defendant when a plaintiff's submissions, but not its pleadings, made out a cause of action ... With the advent of the modern principles underlying the CPLR, application of the archaic rule is no longer merited." As such, based on the evidentiary facts making out such a cause of action herein, Defendants' pleading-focused arguments should fail.

As the Court Ayala v V & O Press Co., 126 AD2d 229 (2d Dept 1987) set forth:

> In [Robinson v Reed-Prentice Div.], the Court of Appeals held that the manufacturer of a product is not liable for an injury which occurs during the use of the product, where such product had been modified since leaving the manufacturer's hands, and where it is shown that the accident would not have occurred but for the subsequent modification. This rule has been qualified in subsequent case law. In Lopez v Precision Papers (67 NY2d 871, affg 107 AD2d 667), the Court of Appeals held that a manufacturer of a product, the design of which incorporates a certain safety feature, may be held liable under a design defect theory even though the removal of that safety feature caused the accident, provided that the product "was purposefully manufactured to permit its use without the safety guard" (Lopez v Precision Papers, supra, at 873). Since, as described above, the plaintiffs submitted certain evidence from which it could be inferred that the press was purposefully designed so as to allow removal of the sweep guard, summary judgment was improperly granted to the defendant

In the instant case, the Plaintiff has herewith submitted evidence from which it may be inferred that the grinder was purposefully designed so as to allow removal of the guard; as such, summary judgment for the defendant would be improperly granted.

## CONCLUSION

Based upon the above, it is respectfully submitted that the subject meat grinder was defectively designed, and that adequate warnings were not provided, and as such the Third-Party Defendant's motion for summary judgment should be denied.

WHEREFORE, Plaintiff respectfully requests this Court issue an Order denying Third-Party Defendant's motion which seeks summary judgment, together with such other and further relief as this Court may deem just and proper.

Dated: Brooklyn, NY
July 14, 2022

/s/ *Yuriy Prakhin*

YURIY PRAKHIN, ESQ.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 14, 2022, a true and correct copy of the foregoing was served via ECF to counsel, as follows:

CARMEN M. VASQUEZ, ESQUIRE
O'Connor, Redd Orlando, LLP
*Attorneys for Defendant*
*PROKRAFT INC.*
P.O. Box 1000
242 King Street
Port Chester, New York 10573
Telephone: (914) 686-1700
Email: cvasquez@oconnorlawfirm.com

THOMAS M. EVANS, ESQUIRE
Congdon, Flaherty, O'Callaghan,
Fishlinger & Pavlides
Attorneys for Third-Party Defendant,
KARZINKA US, INC.
333 Earle Ovington Boulevard, Suite 502
Uniondale, NY  11553
Telephone:  (516) 542-5900
Email:  tevans@cfolegal.com

LAW OFFICE OF YURIY PRAKHIN, P.C.

/s/ *Yuriy Prakhin*

YURIY PRAKHIN, ESQUIRE
GIL ZOHAR, ESQUIRE
ANNA C. BROXMEYER, ESQUIRE
*Counsel for Plaintiff, Isojon Khusenov*
1883   86th Street, 2nd Floor

Brooklyn, New York 11214
Telephone: (718) 946-5099
Facsimile: (718) 373-7614
E-mail:  yp@prakhinlaw.com
         gil@prakhinlaw.com
         annab@prakhinlaw.com