UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------------X
ISOJON KHUSENOV,

                              Case No. 1:21-CV-3703-HG

          Plaintiff,             **REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' FRCP 56 MOTION FOR SUMMARY JUDGMENT**

        -against-

PROKRAFT INC. and PRO-CUT,

          Defendants.
-------------------------------------------------------------------------------X
PROKRAFT INC.,

          Third-Party Plaintiff,

        -against-

KARZINKA US, INC.,

          Third-Party Defendant.
-------------------------------------------------------------------------------X

## PRELIMINARY STATEMENT

Defendants/Third-Party Plaintiff PROKRAFT INC. and PRO-CUT (collectively referred to as "Prokraft") submit this Memorandum of Law in reply to Plaintiff ISOJON KHUSENOV's ("Plaintiff") Memorandum of Law in opposition to Prokraft's Motion for Summary Judgment and in support of Prokraft's application for an Order, issued pursuant to F.R.C. P. Rule 56, granting summary judgment in favor of Prokraft and against Plaintiff and for common law indemnity against Third Party Defendant KARZINKA US, INC. ("Karzinka")

The material facts of this case stand unrefuted. On December 17, 2019, Prokraft sold a Pro-

Cut Model KG-32 meat grinder to S&V Restaurant Equipment Mfg. in New York. Thereafter, on January 7, 2020, S&V Restaurant Equipment Mfg. sold the subject meat grinder to Karzinka. Upon delivery, exactly as designed and manufactured, the KG-32 meat grinder was equipped with a non-removable safety guard – the purpose of which is to prevent operators from reaching a hand into the grinder. The below picture illustrates an exemplar of what would have been the "as-purchased" condition of the KG-32 meat grinder's headstock with the permanently affixed guard in place:



Although the headstock is designed to be removed for cleaning, the safety guard is permanently affixed to the headstock and is not intended to be removed during operation of the grinder, cleaning of the grinder or for any purpose. Indeed, a warning label placed on the side of the subject meat grinder reads: "Do NOT operate if safety guard has been removed or damaged:"



Further, a pictograph warning depicted injury to fingers inserted into the worm-screw of the machinery and a prohibition against sticking one's hand into the opening.



Sometime after Karzinka's purchase, a Karzinka employee tried unsuccessfully to forcibly remove the guard with a hammer. That employee then used a motorized power grinder to cut through the posts on each side of the guard and intentionally removed the safety device.

The accident giving rise to this lawsuit occurred after the safety guard had been

intentionally removed and destroyed by the Karzinka employee. Plaintiff's hand was drawn into the unguarded opening of the meat grinder while he was pushing meat into the opening with his hand and he suffered significant personal injuries. The accident at issue could not have happened but for the Karzinka employee intentionally removing the safety guard.

The fundamental basis for this motion is that the subject product, a KG-32 Meat Grinder, as designed, manufactured, and delivered to Karzinka was not defective and that (1) the Karzinka's employee's decision to affirmatively saw off and remove the permanently affixed safety guard and (2) Plaintiff's placing his hand into the vicinity of the unguarded opening while manually pushing the meat into it are the only two causes of the subject accident.

## **PROCEDURAL ISSUES**

Prokraft moved for summary judgment, prior to expert discovery taking place, based on the directive of Judge Cogan as memorialized in the order and hearing transcript dated May 2, 2022. See ECF No. 30-1 at 4:24-25; 13:15-17. Prior to filing the Motion for Summary Judgment, Prokraft's counsel heeded Judge Cogan's cautions and carefully considered the undisputed facts and strength of New York case law addressing strikingly similar situations. Prokraft respectfully submits that the case law cited in its Motion for Summary Judgment and this Reply is well-settled, directly on-point and fully supports the proposition that a cause of action in products liability cannot be successful where there was an unforeseeable subsequent modification (removal of an essential safety guard) of an otherwise safe product that was not defectively designed.

The plaintiff's opposition to Prokraft's motion relies, in part, on an affidavit and report of their liability expert Andy Foley, P.E. which was produced to Prokraft's counsel on the last day that expert discovery remained open despite the fact that Mr. Foley's report was dated nearly one month prior.[1]

---

[1] See ECF No. 41.

Pursuant to this Court's Order dated July 21, 2022, the Plaintiff's disclosure of their expert's report was deemed untimely and the Court excluded Mr. Foley's report and opinions from consideration - subject to the Plaintiff showing cause by July 28, 2022 why the disclosure should not be excluded. (ECF No. 41) The Order further provides that the Court may entertain supplemental briefing with respect to the summary judgment motion following its consideration of Plaintiff's response to the Show Cause Order. (ECF No. 41). As such, the defendants' submission is premised on the preclusion of the plaintiff's expert at this time. Defendants respectfully submit that should the Plaintiff's expert not be excluded, then the Prokraft should have the opportunity to not only depose Plaintiff's expert but to supplement its brief on any issue raised by the Plaintiff's expert.

## LEGAL ARGUMENTS

**POINT I - THE MODIFICATION OF THE GRINDER MADE IT UNSAFE**

In his Response, Plaintiff erroneously contends that an expert is required to establish that the subject KG-32 Meat Grinder was safe and not defectively designed. However, our Courts consistently hold that a manufacturer of a purportedly defectively designed product demonstrates, *prima facie*, its entitlement to summary judgment by demonstrating either: (1) the absence of direct evidence that a product's design was unreasonably unsafe, see Beruashvili v. Hobart Corp., 2010 U.S. Dist. LEXIS 146015, at 37 (E.D.N.Y. 2010); or (2) "[that] after the product [left] the possession and control of the manufacturer, there [was] a subsequent modification which substantially alter[ed] the product and [was] the proximate cause of plaintiff's injuries." Robinson v. Reed-Prentice Div. of Package Mach. Co., 49 N.Y.2d 471, 475 (1980). The Court of Appeals in Robinson unequivocally stated that a "manufacturer's duty * * * does *not* extend to designing a product that is impossible to abuse or one whose safety features may not be circumvented." (Emphasis Added) Id. at 480-481.

Beruashvili v. Hobart Corp., 2010 U.S. Dist. LEXIS 146015. (E.D.N.Y. 2010) presents strikingly similar facts. In dismissing plaintiff's design defect claim, the Court held that, not only was there an absence of evidence that the design of the meat grinder was unreasonably unsafe, but "[t]o the contrary, the proof adduced convincingly show[ed] that [plaintiff's] accident was not caused by any design defect in the manufacture of the 4046 Grinder. Id. at 37-38. Moreover, the Court noted that "[t]o the extent that the condition of the machine contributed to the happening of the accident, the proof point[ed] to a third party's post-sale removal of the guard." Id.

Hernandez v. Biro Mfg. Co., 251 A.D.2d 375 (2d Dept. 1998) also presents a remarkably similar fact pattern. In that case, the plaintiff's "right hand was amputated when he was loading a meat grinder and the sleeve of his uniform became caught in the grinder as he was trying to free a piece of frozen meat by inserting his hand into the grinder." Id. at 376. "It [was] undisputed that the safety features had been removed from the grinder prior to the plaintiff's operation of the machine on the day of the incident... [and] that at the time the grinder left the possession and control of the manufacturer... and the assembler... its safety features were intact." Id. The Appellate Division held that "a manufacturer cannot be held liable in negligence or in strict products liability 'where, after the product leaves the possession and control of the manufacturer, there is a subsequent modification which substantially alters the product and is the proximate cause of the plaintiff's injuries.'" Id., quoting Robinson v. Reed-Prentice Div. of Package Mach. Co., 49 N.Y.2d 471, 476 (1980).

No meaningful distinction exists between Beruashvilli, Hernandez and the present case. Here, the KG-32 meat grinder was designed, manufactured, and delivered with a permanently affixed steel guard which, had it not been forcibly sawed off by Karzinka employees, would have prevented Khusenov's accident. There is no direct evidence that the meat grinder was unreasonably

unsafe. Consequently, this Court should enter summary judgment in Prokraft's favor and against Plaintiff.

**POINT II - THE MODIFICATION OF THE GRINDER BY CUTTING OFF THE PERMANENT GUARD WAS NOT REASONABLY FORESEEABLE SINCE THE GRINDER WAS NOT PURPOSEFULLY DESIGNED TO BE OPERATED WITHOUT THE SAFETY DEVICE**

In its Response, Plaintiff wrongfully contends that it was reasonably foreseeable that this permanent guard, *which could not be unscrewed or unlatched*, would be removed. First and foremost, the record is glaringly absent of any facts upon which this Court could somehow conclude that removal of a permanently affixed guard would have been reasonably foreseeable. Plaintiff cannot cite to any similar accidents. Plaintiff cannot cite to a single situation where a customer using a Pro-Cut brand grinder purposefully and intentionally cut off the affixed guard. Neither the Operator's Manual nor the warning labels on the meat grinder suggest in any way that the affixed safety guard should be removed for any purpose. Consequently, Plaintiff's contention that Prokraft should have foreseen that a customer would cut off the safety guard with a grinder after unsuccessfully trying to use a hammer to pound it off is specious and should be wholly disregarded by the Court.

Additionally, Plaintiff's "foreseeability" argument has been rejected by New York courts addressing situations where a customer has purposefully removed or destroyed a key safety feature. The New York Court of Appeals has concluded that "principals [sic] of foreseeability . . . are inapposite when a third party affirmatively abuses a product by consciously bypassing built in safety features." Robinson, 49 N.Y.2d at 480. The court in Robinson went on to explain that "[material] alterations at the hands of a third party which work a substantial change in the condition in which the product was sold by destroying the functional utility of a key safety feature, however foreseeable that modification may have been, are not within the ambit of a manufacturer's

responsibility." Id. at 481.

To be fair, New York courts recognize a narrow exception to the general foreseeability rule if the product was "purposefully manufactured" to be operated without the safety device. Lopez v. Precision Papers, Inc., 67 N.Y.2d 871, 873, *aff'g,* 107 A.D.2d 667 (2d Dept. 1985).The question of whether a product is purposefully designed to be operated without a safety device is answered by examining the nature and purpose of the device and the ease in which it may be removed. Instructively, the Lopez decision, Id., notes:

> In Robinson, *supra*, the modification was so substantial that it permanently destroyed the functional utility of a safety gate. Under no view of the facts could one conclude that that modification was intended either for versatility of functioning or for ease of cleaning. We believe that Robinson represents a sensible limitation on the scope of manufacturer liability lest a manufacturer be made an insurer against all injuries that might arise from the use or misuse of a product.

Lopez v. Precision Papers, Inc., 107 A.D.2d 667, 668-69 (2d Dept. 1985).

For example, where the guard was for a table press was "easily removable," there was a question of fact to whether the label press was purposefully manufactured to permit its use without the safety guards. Fernandez v. Mark Andy, Inc., 7 A.D.3d 484, 485 (2d Dept. 2004). Likewise, a similar result was reached where the "plexiglass guard ... was not permanently affixed to the machine but simply attached by two clips, [and] that defendant's president testified that the recommended method to clean the machine included removal of the safety guard." Tuesca v. Rando Mach. Corp., 89 N.Y.2d 966, 968 (1997). Similarly, an "attached but easily removable 'cutter guard'" created a question of fact whether the planer was designed to permit its use without the safety guards. Eiss v. Sears, 275 A.D.2d 919, 919-20 (4th Dept. 2000).

In the following cases, the Courts found that the safety devices were not purposefully

designed to allow operation without the guard. In Robinson, supra, the workers cut a hole of approximately 6 by 14 inches in the Plexiglas portion of the safety gate. The machine, as designed, made no provision for such an aperture. This machine, of course, was found to not be "purposefully manufactured" to be operated without the safety device, which had been effectively bypassed. In a case very similar to ours, the workers removed a safety guard from a meat grinder that was affixed by "three fairly heavy rivets which would have to be removed forcibly" and the Court found that this product was not purposefully manufactured to be used without the guard. Darsan v. Guncalito Corp., 153 A.D.2d 868, 870 (2d Dept. 1989).

In another case, a blade guard on a fabric-cutting machine was not of the type designed to be easily removed for convenience in using the machine and "by widening the clearance between the bottom of the guard and the cutting surface of the machine ... the modification destroyed the utility and effectiveness of the guard as a safety feature, thus contributing to the accident." Masiello v. Efficiency Devices, Inc., 6 A.D.3d 672 (2d Dept. 2004). With respect to a saw, the plaintiff's employer wedged the saw's moveable blade guard open by placing a piece of wood between the guard and the body of the saw. The Court held:

> We reject the plaintiff's contention that this matter falls within the exception carved out by *Ayala v & O Press Co.* (126 AD2d 229) and *Lopez v Precision Papers* (107 AD2d 667, affd 67 NY2d 871). In those instances, the safety features on the machines in question were designed to be removable, and the machines were designed to operate in the absence of the safety features. In contrast, the safety mechanism here was not designed to be removable. Rather, it was defeated by a substantial material alteration.

Wyda v. Makita Elec. Works, 232 A.D.2d 407, 408 (2d Dept. 1996). Similarly, a similar decision was reached where the guard consisted of:

> [A] top cover, which was assembled using four screws and lock washers, and was attached to four 5-inch-high posts, connecting it to

> the machine plates housing the roller shafts and tooling. The sides of the machine were enclosed by two steel side covers connected to the top cover through four top curtains, two on each side of the machine running from front to back, and to the stand at the bottom. Two end curtains were also bolted to the top curtain on the operator's end and on the exit of the machine. When the top cover was in place, the entrance plates, where the sheet metal entered the machine, was one quarter of an inch high and was not adjustable.

Patino v. Lockformer Co., 303 A.D.2d 731, 731 (2d Dept. 2003). Likewise, where the Plaintiff bypassed the starter safety switch on a tractor, which was beneath the transmission cover, and secured with 12 bolts, the Court found that the safety switch was not purposefully designed to allow operation without the guard. Mackney v. Ford Motor Co., 251 A.D.2d 298, 299 (2d Dept. 1998).

In the case at hand, the guard to the subject meat grinder was permanently affixed to the head stock. There were no clips, screws or bolts which enabled disassembly for cleaning or any other purpose. A Karzinka employee first tried to remove the safety guard by hammering it off. That was unsuccessful. He had to eventually use a motorized power grinder to saw off the guard, thereby destroying it. As such, the Lopez exception, *supra*, is not remotely applicable to this case. There exists no question of material fact that the permanently affixed guard was not "purposefully manufactured" to be operated without the safety device. To the contrary, the undisputed material facts in this case demonstrate that the meat grinder was designed to be used only with the permanently affixed guard in place.

**POINT III -   THE REMOVAL OF THE GUARD WAS A SUPERSEDING CAUSE OF THE PLAINTIFF'S ACCIDENT**

A substantial modification constitutes a superseding cause of the accident and as such, strict products liability may not be predicated upon a theory that the manufacturer failed to employ a safer design alternative. See, Rosenfeld v. Multivac, Inc., 2019 U.S. Dist. LEXIS 65682 (S.D.N.Y. 2019)

(internal quotation omitted) quoting Hoover v. New Holland N.A., Inc., 23 N.Y.3d 41, 56 (2014). Here, Plaintiff, without any basis for doing so, asserts that an interlock device and a more easily accessible stop button should have been employed.

Nevertheless, with respect to the claim that an interlock was required where the guard was intentionally removed, our Courts have rejected such theories as a matter of law. See, Giunta v. Delta Int'l Mach., 300 A.D.2d 350, 351 (2d Dept. 2002); David v Makita, U.S.A., 233 A.D.2d 145 (1st Dept. 1996); Banks v Makita, U.S.A. , 226 A.D.2d 659, 641 (2d Dept. 1996). The same would hold true as to the plaintiff's allegations that a differently positioned and configured "stop" button would have prevented the accident, which also requires an expert's opinion.

**POINT IV - THE SAFETY WARNINGS WERE ADEQUATE AND ANY CLAIMED ISSUES WITH SAME IS NOT THE PROXIMATE CAUSE OF THE INCIDENT**

New York law stands well-settled that a product manufacturer may establish, *prima facie*, entitlement to summary dismissal of a failure to warn claim by demonstrating that it provided an operator's manual and/or warning decals, advising/warning of the subject danger. See Theoharis v. Pengate Handling Sys. of N.Y., Inc., 300 A.D.2d 884, 886 (3rd Dept. 2002); Wood v. Peabody Int'l Corp., 187 A.D.2d 824 (3rd Dept. 1992); Aghabi v Sebro, 256 A.D.2d 287, 288 (2d Dept. 1998). The Court of Appeals has "emphasize[d], however, that a safety device built into the integrated final product is often the most effective way to communicate that operation of the product without the device is hazardous." Liriano v. Hobart Corp., 92 N.Y.2d at 241. "Thus, where the injured party was fully aware of the hazard through general knowledge, observation or common sense, or participated in the removal of the safety device whose purpose is obvious, lack of a warning about that danger may well obviate the failure to warn as a legal cause of an injury resulting from that danger." "Put differently, when a warning would have added nothing to the user's appreciation of the danger, no duty to warn

exists as no benefit would be gained by requiring a warning." Id. at 242.

Here, the KG-32 Meat Grinder: (1) came with an operator's manual, available on the internet, which warned that the operator should never use his/her hands to feed products directly into the bowl area, and that, instead, the "pusher"/plunger provided with the grinder should always be used; and (2) had three prominently displayed sticker pictograms, explicitly warning of the dangers attendant to using one's hands to 'feed' the meat into the KG- 32 meat grinder and illustrating that the 'plunger' - which was provided along with the grinder - should instead be used. Again, the Plaintiff' expert is preluded at this time. Further, here is no duty to warn of an open and obvious danger of which the product user is actually aware or should be aware as a result of ordinary observation or as a matter of common sense. See, Liriano v Hobart Corp., 92 N.Y.2d 232, 238-239 (1998); Carbone by Carbone v. Alagna, 239 A.D.2d 454, 456 (2dDept. 1997). See also, Scardefield v. Telsmith, Inc., 267 A.D.2d 560 (3d Dept. 1999) *lv denied* 94 N.Y.2d 761 (2000); Felle v. W.W. Grainger, Inc., 302 A.D.2d 971, 973 (4th Dept. 2003).

Moreover, Mr. Khusenov testified to an appreciation of the danger involved in using the grinder without the guard. His coworker testified that all of the Karzinka butchers were aware of the danger. They had instructed Khusenov that, as the safety guard had been removed, he needed to be very careful and ***always*** use the plunger, and ***never*** his hands, while grinding meat.

## CONCLUSION

The question presented in Prokraft's Motion for Summary Judgment is not whether Plaintiff suffered serious a serious personal injury. He did and it is unfortunate. However, as noted in Lopez, New York law does not require a product manufacturer to stand in the position as an insurer of any and all incidents or accidents involving its products. Lopez, 107 A.D. at 668-69. Moreover, as held

in Robinson, New York law does not require product manufacturers to design a product impossible to abuse or a duty design safety features be bypassed. Robinson, 49 N.Y.2d at 480-81.

The material facts of this case stand undisputed. Plaintiff's unfortunate accident and injury directly resulted from a Karzinka employee taking a power tool and grinding off a permanently affixed guard. If the safety guard - which was part of the original design, manufactured consistent with that design and in place at the time of sale – remained in place, the incident at issue would not have happened and Plaintiff would not have suffered his unfortunate injury.

The facts are clear. The case law is on-point. For the reasons set forth above and in Prokraft's motion in chief, Defendants respectfully submit that they are entitled to summary judgment in their favor and against Plaintiff, or in the alternative, a judgment against Karzinka for common law indemnity.

Dated:    Port Chester, New York
          July 25, 2022

_____
Peter Urreta