UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ISOJON KHUSENOV,<br><br>    *-against-*.<br><br>PROKRAFT INC. and. PRO-CUT,<br><br>PROKRAFT INC.,<br><br>    *-against-*.<br><br>KARZINKA US, INC., | Case No. 1:21-CV-3703-HG<br>    *Plaintiff*,<br><br><br>    *Defendants*.<br><br><br>    *Third-Party Plaintiff*,<br><br><br>    *Third-Party Defendant*. |

**PLAINTIFF'S RESPONSE TO DEFENDANTS PROKRAFT INC. AND PRO-CUT'S SUPPLEMENTAL MEMORANDUM OF LAW, AND RESPONSE TO THIRD-PARTY DEFENDANT, KARZINKA US, INC.'S SUR REPLY MEMORANDUM OF LAW**

    Plaintiff, ISOJON KHUSENOV, by and through his undersigned counsel, hereby submits his response to Defendants, PROKRAFT INC. and PRO-CUT's Supplemental Memorandum of Law in Support of their Motion for Summary Judgment, and Third-Party Defendant, KARZINKA US, INC.'s Sur Reply Memorandum of Law pursuant to this Court's Scheduling Order issued on August 1, 2022.

    Plaintiff submitted, in opposition to the pending motions for summary judgment, an Affidavit of Dr. Andrew Foley, a Professional Engineer with a Ph.D. in Engineering Mechanics and over 30 years of experience, in which he provides evidence that the meat grinder was defective in design and there was a failure to warn, thus requiring denial of the motions. In response to this Affidavit, Defendants and Third-Party Defendant each seek to preclude his testimony, and proffer their own purported experts, now, in support of their already pending motions previously unsupported by any expert Affidavits. In sum, it is respectfully submitted that Dr Foley's relevant

expertise and knowledge was demonstrated in opposition to the pending motions, and the submission of his deposition testimony further establishes same.

It is further respectfully submitted that such a belated submission of an expert Affidavit of their own should not be considered for purposes of supporting Defendants' and Third-Party Defendant's motions for summary judgment. While deposition scheduling and meeting expert disclosure deadlines (issues presented to and previously resolved by this Court by providing extensions of time), delayed the exchange of such information, there is simply no excuse for Defendants and Third-Party Defendant to have moved for summary judgment without fully supporting their motions with any applicable expert testimony. As such, the Affidavit of George Pfreundschuh submitted with Defendants' Supplemental Memorandum of Law, should not be considered here. Indeed, as discussed further below, he should be excluded from testifying at trial as well for lack of expertise in the areas in which he seeks to opine.

**I.     Plaintiff's Expert, Dr. Andrew Foley, is a Qualified Expert Whose Findings Meet the *Daubert* Standard to be Considered as Reliable Scientific Evidence.**

At his deposition (transcript attached as Defendants' Exhibit "A"), Plaintiff's expert, Dr. Foley, testified regarding his experience, answering questions regarding his C.V., which includes a B.S. in electrical mechanical engineering and Ph.D. in engineering mechanics (Defendants' Exhibit "A" at p. 8). While working toward his Ph.D., Dr. Foley worked at Cranfield University primarily on "rotating machinery" (*Id.* at p. 11). While he did not review Plaintiff's deposition testimony prior to rendering an opinion in this matter, he does not need to know how many times Plaintiff used the machine in order to render an opinion as to its defective nature (*Id.* at p. 93), and his having used the machine two to three times a week for six months does not alter his perspective (*Id.* at p. 94). In addition to inspecting the machine at issue, he reviewed the video of the incident (*Id.* at p. 65). Still images taken from the video, which were in his report, supplied facts forming

2

his base assumptions, which informed his opinions (*Id.* at pp. 73-74). Dr. Foley's testimony clearly illustrates his knowledge and expertise with respect to the inner workings of the machine at issue (*Id.* at pp. 77-78, 81), including the on and off buttons (*Id.* at pp. 84-86). His concerns regarding improper, hardly reachable, and poor visibility for the grinder operator, location of on and off buttons coincide with industry requirements (NFPA 79-2007 Electrical Standard for Industrial Machinery "Stop and emergency stop push buttons shall be continuously operable and readily accessible."). Inadequacy of safety pertaining to on/off buttons raised by Dr. Foley coincide with OSHA requirements (OSHA 3170-02R (2007), OSHA's DTSEM fact sheet FS-3794 – requirements for reverse switch). Dr. Foley's statement that warning signs are improperly placed are in concert with ANSI Z535.4 2011 R(2017) (an American standard for presenting safety and accident prevention information): warning signs should be visible.

  The presence of a danger/warning sticker changes things because it reinforces the danger even if it can be seen or is otherwise acknowledged by the Plaintiff user; they add to the sense of the danger (*Id.* at p. 118) (disagreeing with the question intended to have him admit the "sticker is of little moment"). "One of them on their own may seem trivial but in their entirety… there's an added benefit… they do help" (*Id.* at p. 119). While the sticker may have been sufficient with a guard in place (*Id.* at pp. 184-185), there is a need for a danger sign once the guard was removed, which as demonstrated in opposition is foreseeable (*Id.* at p. 184). The advertised meat volume capacity implied potential that could not be realized with the guard so it is not so clear cut that the guard should absolutely not be removed (*Id.* at pp. 177-178)

  The concepts of perception and reaction time were discussed (*Id.* at pp. 125-126), including differences with how pain is sensed (*Id.* at p. 126), demonstrating his competence in this area. Dr. Foley concluded that reaction time would not be "seconds" (*Id.* at p. 128); this is not dissimilar

from touching a hot stove where reaction time is "fractions of a second" (*Id.* at p. 128), as Plaintiff was already processing pain at the point in time when just his fingertips were damaged (*Id.* at p. 129). Machine stoppage would have been very quick if turned off in this case (*Id.* at p. 137). He did not need to test the machine to know that coast down time would be fractions of a second, based upon his inspection of the machine (*Id.* at p. 138), and the fact there is 3kw power when it is running—the auger radius is not large, there is not much stored energy, and friction in pumping meat through the auger is high, unlike a machine with nothing in it (*Id.* at p. 139). Dr. Foley has used standard mushroom stop buttons on rotating machinery such as lathes, mills, rotating machines (*Id.* at pp. 141-142), and he recommends putting it in front rather than the side of the subject meat grinder (*Id.* at p. 142) which he testifies "are on similar machines, competitive machines. They're already there" (*Id.* at p. 150). Rejecting the attorney's questioning regarding qualification to testify regarding the interaction of human body parts and machinery, he testified that while not a medical doctor, he has understanding of what a grinder will do to a hand, and he has seen pictures of hands in grinders and knows the damage it does (*Id.* at pp. 153-154). He is informed Plaintiff's injuries went up passed his wrist, and he knows what the injury should look like based upon prior experience with hands in grinders (*Id.* at p. 154). The so-called "napkin" sketch complained of in the supplemental memorandum of law/sur reply was intended to show concept, and was not intended to be a detailed drawing or schematic (*Id.* at p. 172). The napkin sketch is illustrative of just how simple and adaptable a concept is being proposed.

     Dr. Foley points to similar products in the marketplace which embody his proposed alternative designs. Moreover, at his deposition (transcript attached hereto as <u>Exhibit "4"</u>) Defendants' expert, George Pfreundschuh, testified to having had direct experience working specifically with two other meat grinders, including one from Hobart, both of which incorporated

4

interlocks (Exhibit "4" at p. 185). He also admitted there would be no difficulty relocating on/off buttons from the side to the front (*Id.* at pp. 174-175), and that the cost difference "in the grand scheme of things is not a big difference for the entire grinder" (*Id.* at p. 176); the cost difference is "very light" (*Id.* at p. 188).

Helpfully, Third-Party Defendant, KARZINKA's expert disclosure confirms, in pertinent part, with respect to meat grinders specifically, that it is indeed industry <u>standard</u> for electric meat grinders to have a reverse switch (*See* OSHA 3170-02R (2007) Safeguarding Equipment and Protecting Employees from Amputations, and OSHA's DTSEM fact sheet FS-3794 - Preventing Cuts and Amputations from Food Slicers and Meat Grinders (2015), Appendix D and E to KARZINKA's expert disclosure, the relevant portion of which is attached hereto as <u>Exhibit "5"</u>). A reverse switch is effectively a secondary mechanism for stopping the processing of meat in the grinder. The subject meat grinder had neither a second (emergency) stop button, nor a reverse switch, which is in violation of these OSHA standards.

Dr. Foley's concerns regarding a difficult to reach off button which was not visible from the grinder operator's location are supported by industry standards (including NFPA 79-2007), which requires that "Stop and emergency stop push buttons shall be continuously operable and readily accessible." His findings of inadequate safety for lack of an emergency stop button is likewise supported by industry standards (including OSHA 3170-02R (2007) and OSHA's DTSEM fact sheet FS-3794, which require a reverse switch). His findings that warning labels were improperly placed are supported by ANSI Z535.4 2011 R(2017), which require warning signs to be visible (*See* pp. 14-15 of Dr. Foley's report, which is attached as Exhibit "1" to Plaintiff's opposition papers).

Defendants argue that Dr. Foley's opinion regarding the emergency stop button is speculative; it is asserted that, for its absence from a more conspicuous or easy to access location to be relevant, Dr. Foley must have based his opinion upon testimony by Plaintiff that he reached for a stop button that was not there. This assertion is absurd because Plaintiff had no reason to believe a button was located anywhere that was not accessible. In any event Plaintiff did make an attempt.

Defendants assert that Dr. Foley's opinion regarding an emergency stop button is lacking for want of drawings or sketches; however, the evidence shows this is not a novel concept but rather such a button is currently available, and a "scientific inquiry" is unnecessary.

Defendants assert that Dr. Foley's opinion regarding an interlock is "junk science" for want of a detailed and tested design beyond the "napkin" sketch provided, asserting that he failed to perform the barest of scientific inquiry. This point actually helps to highlight the simplicity of the design suggested, and in turn feasibility: The sketch is simply referrable to the guard already designed and manufactured for the subject machine, simply attached to wiring at either end.

Third-Party Defendant, KARZINKA, argues the adequacy of the warning sticker does not call for expert testimony. Whether or not this is the case, surely the expert's discussion will assist the trier of fact in reaching a determination, and this provides no basis to preclude his testimony. In any event, Defendants assert that Dr. Foley's opinion regarding adequacy of safety labels should fail because an owner's manual provided warning, and Plaintiff was aware of the hazard. However, Dr. Foley's opinion is that the warning/danger label should have been more prominently placed so it could have reinforced the seriousness of the danger.

Based upon all of the above, it is respectfully submitted that Dr. Foley has been sufficiently established as an expert witness whose testimony, based upon an inspection of the subject machine

and his knowledge of industry practice and PSHA regulations, should be permitted at trial of this matter.

## II. Defendants' Expert, George Pfreundschuh's Testimony Should Not be Considered.

Mr. Pfreundschuh's Affidavit, which, as argued above, should not be considered at this late juncture, is insufficient in substance as follows: 1) His assertion that employees would have likely bypassed an interlock is speculation; 2) the added layer of protection of an interlock does not implicitly involve a philosophy of intentional design that the guard is "removable;" it would have been yet another layer of protection that further emphasized the danger and disincentivized alteration; 3) there is quite a difference between crudely attempting to hammer the guard off before using a grinder, and the additional knowledge (or perhaps also additional intelligence) necessary to know about the existence of the interlock, the way it worked, and how to bypass it, and then possessing the ability to actually do so. It stands to reason that this scenario is, to the extent not impermissible speculation, unlikely (there is no evidence of any such capabilities possessed by any of the relevant employees). 4) the measurement of time for auger rotation is unreliable, unsubstantiated, and indeed performed unprofessionally at minimum. The 3 ½ second coast down time from inertia of the machine is not stated as involving the presence of meat or human hand as opposed to a clean and empty auger coasting with virtually no friction. This will be discussed further below in examination of Mr. Pfreundschuh's deposition testimony, but there is a world of difference between an injury occurring which involves mere fingertips before an emergency stop or killswitch can be activated, and those additional seconds during which whole fingers, a hand, and arm is pulled further and further into and through the machine.

Indeed, while the substance of Mr. Pfreundschuh's Affidavit is insufficient as discussed above, he lacks sufficient education or experience in order to qualify him in the subject matter at

7

hand. He does not present with any expertise in FDA standards that apply to food processing machines (*See* questioning of Dr. Foley at his deposition p. 50); "human factors and ergonomics" (*See* questioning of Dr. Foley at his deposition p. 51); "biomechanical engineering" (*See* questioning of Dr. Foley at his deposition p. 53) "perception or reaction time" (*See* questioning of Dr. Foley at his deposition p. 125). Any of the potentially relevant sounding line items on his C.V. are merely continuing education courses lasting only between one and four days. His continuing education courses are all minimal and irrelevant subject matter.

At his deposition, Mr. Pfreundschuh testified that, in the last five years he has not had any work outside of claim/litigation review and testimony (Exhibit "4" at p. 13-14); the vast majority of the claims he works on are property damage (*Id.* at p. 12); and he thinks of himself as a "defense expert" (*Id.* at p. 99) clearly eliminating any illusion of objectivity in this case. For the first 12 years of his career, he worked on telecommunications and defense projects, classified fiber optics (*Id.* at p. 34) all of which is clearly inapplicable to the instant case. Through 2002, when hired by his current firm, Affiliated Engineering, he did not deal with any types of emergency stop buttons or warning instructions/signage that may go with machinery (*Id.* at pp. 77-78); when he started there, he focused on slip/trip and falls (*Id.* at pp. 80-81). Although he testified his company has a Human Factors and Ergonomics book in their library that he has, vaguely stated, used over the years (*Id.* at p. 189), he concedes it is impossible for him to conclude the total perception and reaction time to get Plaintiff's hand to the off button (*Id.* at p. 189); he has not done any testing, and feels it is speculation (*Id.* at p. 190). He also concedes that while working at the machine one cannot see the warning label (*Id.* at p. 157) or the on/off buttons (*Id.* at pp. 160-161), and he only measured the 'no load' speed of the machine (*Id.* at p. 164, 171). Once Plaintiff's hand/arm was in there, things change and it slows down the rpm, but he does not know by how much (*Id.* at pp.

8

166, 171). His only prior experience inspecting a meat grinder was of one that was smaller (*Id.* at p. 129) and with "substantially less horsepower" (*Id.* p. 131).

Pursuant to the provisions of Rules 702 and 703 of the Federal Rules of Evidence, as well as the standards highlighted in *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) and its progeny, Defendant's engineer, George Pfreundschuh, should be excluded from testifying and offering his opinions regarding the defective nature of the subject meat grinder: (a) for want of sufficient and prominently placed danger/warning label(s); (b) for want of a prominently placed emergency shut off; and (c) for want of an interlock that would have prevented the machine from operating in the absence of a guard. Mr. Pfreundschuh is not qualified to testify as to these matters as he lacks sufficient knowledge, skill, experience, training, or education in the material issues at hand. Any scientific, technical, or other specialized knowledge he may have is insufficient for purposes of helping the trier of fact to understand the evidence or to determine a fact in issue.

By contrast, in the instant case, Dr. Foley has demonstrably relevant experience, provides much more than conclusory opinions, references industry standards, and shows that alternative designs are available and feasible. Mr. Pfreundschuh's testimony on the other hand should be excluded as it is so fundamentally unsupported that it can offer no assistance to a jury, particularly in view of his admitted inexperience with the subjects upon which Defendants would need to rely.

## **CONCLUSION**

Based upon the above, it is respectfully submitted that the subject meat grinder was indeed defectively designed, that adequate warnings were not provided, and that Defendants' engineer, George Pfreundschuh, lacks sufficient knowledge, skill, experience, training, or education in the material issues at hand. By contrast, Plaintiff's expert, Dr. Andrew Foley has been clearly established to have provided reliable opinions, as they are based upon reasoning and

9

methodologies that are not novel and not reasonably in question under *Daubert*. Dr. Foley's *concepts* are hardly rocket science; his opinions boil down to a preference for location and appearance of an emergency shut off, location and appearance of a warning/danger label, and urging that the subject machine should have had an interlock (of the kind which is already available in competitor machines as well as other machines with similar safety concerns (e.g. the most inexpensive of coffee grinders whose rotating blades are rendered inoperable without its interlock in place). Dr. Foley's reasoning and methodology are not in question; it is not disputed that his opinion is the product of reliable principles and methods which were reliably applied. Defendants' argument boils down to the assertion that his testimony is not based upon sufficient facts or data, in particular his not having reviewed the transcripts of Plaintiff's testimony prior to forming his conclusions. However, as discussed above, based upon all of the facts and information he obtained and was provided with, his findings and conclusions are clearly very well informed.

WHEREFORE, Plaintiff respectfully requests this Court issue an Order denying Defendants' and Third-Party Defendant's motions which seek summary judgment, and precluding Defendants' engineer, George Pfreundschuh, from testifying and offering his opinions in this matter, together with such other and further relief as this Court may deem just and proper.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 6, 2022, a true and correct copy of the foregoing was served via ECF to counsel, as follows:

Peter Urreta, Esq.
O'CONNOR REDD ORLANDO LLP
*Attorneys for Defendants*
*PROKRAFT INC. and PRO-CUT*
P.O. Box 1000 | 242 King Street
Port Chester, New York 10573
(914) 686-1700
purreta@oconnorlawfirm.com

Thomas M. Evans, Esq.
CONGDON, FLAHERTY, O'CALLAGHAN
*Attorneys for Third-Party Defendant*
*KARZINKA US, INC*
333 Earle Ovington Boulevard, #502
Uniondale, New York 11553
Tel.: (516) 542-5900
Fax: (516) 542-5912
tevans@cfolegal.com

                                         Respectfully submitted,

                                         /s/ *Yuriy Prakhin*
                                         _____
                                         LAW OFFICE OF YURIY PRAKHIN, P.C.
                                         *Attorneys for Plaintiff*
                                         1883 86th Street, 2nd Floor
                                         Brooklyn, New York 11214
                                         (718) 946-5099
                                         yp@prakhinlaw.com
                                         sgt.gilz@gmail.com
                                         annab@prakhinlaw.com